## M'DONALD *against* HEWETT.

THIS was an action of trover for a quantity of timber. The cause was tried before his honour the chief justice, at the *Albany* circuit, in *October*, 1817.

The plaintiff produced in evidence the following writing or bill of sale. " *Stillwater*, *March* 16, 1816. *William M'Donald* bought of *John Neilson*, junior, 100 sticks timber, consisting partly of oak, pine, hemlock, and elm, lying on the east side of *Hudson* river, in the town of *Easton*, *Washington* county : also 150 sticks timber, consisting of oak and pine, lying on the bank of *Hudson* river, in the town of *Stillwater*. The said *William M'Donald* is to pay for the same at the measurement in the city of *New-York*, when the said timber is delivered and inspected, and also, is to pay the fair market price in the city of *New-York*, when delivered. The said *John Neilson* has contracted, and does agree to deliver the same on or before the first *July* next, and also, the said *John Neilson*, jun. agrees that the amount of the said timber shall be endorsed on his notes, which the said *William M'Donald* holds against him;" (describing them,) " and if the said timber amounts to any thing more than the said notes, the said *William M'Donald* is to pay the overplus to the said *John Neilson*, jun." The defendant was employed by *Neilson* to take the timber to *New-York*, and on his arrival there, it was demanded of him by the plaintiff, but he refused to deliver it, and left it with the father of the plaintiff, who sold it on the plaintiff's account.

The defendant, during the course of the trial, moved for a nonsuit, on the ground that there had not been such a sale to the plaintiff as would enable him to maintain this action; and afterwards, on the ground, that the action could not be maintained against the defendant, he being only the servant and agent of *Neilson*, and that, in fact, there was no conversion by the defendant; but the judge, in both instances,

Where after a sale of goods some act remains to be done by the vendor before delivery, the property does not vest in the vendee, but continues at the risk of the vendor.

The plaintiff and A. entered into an agreement, which stated that the plaintiff had bought of A. a certain quantity of timber, which the plaintiff was to pay for at the measurement in the city of *New-York*, where it was delivered and inspected, and also to pay the fair market price in *New-York* when it was delivered: the plaintiff also agreed, that the amount of the timber should be indorsed on notes which he held against A., and if it exceeded the amount of the notes, the plaintiff should pay the balance to A. : it was held, that this agreement was executory, and did not vest the property in the timber in the plaintiff, who, therefore, could not maintain an action of trover against a third person for the conversion of it.

M'DONALD
v.
HEWETT.

denied the motion, and a verdict was found for the plaintiff, subject to the opinion of the court.

*Huntington* for the plaintiff. As between the plaintiff and *Neilson*, there was such a contract of sale and transfer of the property in the timber, as would enable the plaintiff to maintain trover. There is a bill of sale, importing a consideration, and a sufficient memorandum in writing within the statute of frauds. The agreement shows that a sale has been made. (*Bac. Abr.* Bills of Sale. *Shep. Touchst.* 224. 1 *Comyn's Dig.* 411. Agreement. (A. 2.) 2 *Com. Dig.* 138. Biens. (D. 3.) 1 *Bl. Com.* 443. 2 *Comyn on Contracts*, 210. 7 *East*, 571. *Bull. N. P.* 35. 2 *Saund.* 47. n. *b.*)

The next question is, whether trover will not lie against the defendant, under the circumstances of the case. The defendant knew that the plaintiff had purchased the timber of *Neilson.* All persons who direct or assist in committing a trespass, or in the conversion of personal property, are in general liable as principals, though not benefitted by the act. (1 *Chitty Pl.* 67. 2 *Saund.* 47. *i.* *Bull N. P.* 41. 6 *Term Rep.* 300. 1 *Bos. & Pull.* 369. 2 *Esp. N. P. Cases*, 553. *Buc. Abr.* Trover, (E) 2 *Saund.* 47. *e. f.* 2 *Str.* 813. *Thorp* v. *Burling*, 11 *Johns. Rep.* 285. *Bristol* v. *Burt*, 7 *Johns. Rep.* 254. *Murray* v. *Burling*, 10 *Johns. Rep.* 172. 175.)

In *Perkins* v. *Smith*, (1 *Wils. Rep.* 328.) it was held, that trover lies against a servant who disposes of the property of another to his master's use. (S. P. *Stephens & others* v. *Elwal*, 4 *Maule & Selw.* 269.)

*T. Sedgwick*, contra. The only question is, whether the property was transferred to the plaintiff. It is an agreement containing mutual stipulations and conditions, not an absolute bill of sale. The agreement is signed by both parties, which is not the case in an ordinary bill of sale. The price was to be paid at a future day. This was an executory contract. In *De Fonclear* v. *Shottenkirk*, (3 *Johns. Rep.* 170.) where there was an agreement for the sale of a slave, and the defendant was to take him on trial, and while with the defendant, the slave ran away, it was held that the defendant was not liable for the loss, it not being an absolute sale.

ALBANY,
August, 1818.

M'DONALD
v.
HEWETT.

Again; a servant is not liable in trover; he is not bound to decide on the right of ownership, on the property being claimed or demanded by a stranger. A demand and refusal are only evidence of a conversion. There was no actual conversion in this case. (*Bull. N. P.* 47.) A servant is not answerable for negligence, but his principal only. (*Lane* v. *Cotton,* 12 *Mod.* 488. 15 *Vin. Abr.* 316. *Master and Servant* (G.) 1 *Roll. Rep.* 78.) *Perkins* v. *Smith,* is very distinguishable from the present case. The defendant there was a *tort-feasor.* The bankrupt had no right to deliver the goods to him; and his selling them for his master's use was a tortious act.

SPENCER, J. delivered the opinion of the court. The only point is, whether the plaintiff was the owner of the timber for which the suit is brought. In construing the agreement, we must look at all its provisions. The contract *was executory, not executed,* and the property did not pass.

The agreement, to be sure, says, that the plaintiff bought of the defendant the timber lying in *Washington* and *Saratoga* counties; but how? The plaintiff was to pay for the same at the measurement in *New-York,* when it was delivered and inspected, and at a fair market price, when delivered. *Neilson* contracted to deliver it by a particular day, and the amount was to be endorsed on notes which *M'Donald* held; and if the timber amounted to more than the notes, the residue was to be paid for.

The distinction between executory and executed contracts is well defined; the former conveys a chose in action, the latter a chose in possession. In 2 *Bl. Com.* 443. 1 *Com. on Con.* 3. 3 *Johns. Rep.* 388. 424. 3 *Johns. Rep.* 44. 5 *Johns. Rep.* 74. 10 *Johns. Rep.* 336. this distinction is stated and illustrated. The usual and decisive test in cases of this kind, is to consider at whose risk the subject of the contract was, and certainly this timber was at the risk of *Neilson.* He was to transport it to *New-York;* it was not to be delivered until inspected; and *Neilson* had the right to withhold a delivery until the amount was endorsed on his notes; and if the fair value, which was yet to be ascertained, exceeded the notes, *Neilson* had a right to insist on payment before he part-

ALBANY,
August, 1818.

COLQUHOUN
v.
N. Y. FIRE-
MEN INS. COM.

ed with his timber, for by the contract these were dependent and simultaneous acts.

The case of *Busk* and another v. *Davis* and another, (2 *Maule & Selwyn*, 397.) and *Shipley* v. *Davis*, (5 *Taunt. Rep.* 621.) are full to the point, that if any act remains to be done by the vendor before delivery, the property does not pass.

Judgment for the defendant.