OUTWATER *against* DODGE and GREEN.

On a sale of goods, where there is any thing to be done by the vendor, in order to ascertain the value, quantity or quality of the goods, the delivery is not complete, so as to bind the bargain within the statute of frauds.

Where a contract to deliver goods, is

[*86]

ASSUMPSIT, for fish sold and delivered by the plaintiff to the defendants; tried at the New York circuit, March, 1826, before DUER, C. Judge; when the plaintiff was nonsuited, on the ground that the fish in question were not delivered to the defendants, within the meaning of the statute of frauds.

A motion was now made to set aside the nonsuit, and for a new trial.

*R. Rowley*, for the plaintiff, cited 3 John. 399, 420; 10 John. 36; 2 Stark. Rep. 127.

*J. R. Hedley*, contra, cited Long on Sales, 47, 152 to

unexecuted by a delivery, the vendor, in a suit for the price, must declare on the special contract; and cannot recover upon a general count, for goods sold and delivered.

155, and the cases there referred to; 15 John. 349; 3 B. & P. 232.

The facts are sufficiently stated in the opinion of the court, which was delivered by

SUTHERLAND, J. The plaintiff was properly nonsuited. The contract was clearly within the statute of frauds. It is not pretended that there was any memorandum of the agreement in writing, nor that anything was paid at the time; and the only question is, whether there was a delivery and acceptance of the fish, within the meaning of the 15th section of the statute, (1 R. L. 79.)

Reynolds and Watrous agree in their statement of the contract. The defendants were to give 19s. per barrel for the fish; to pay for the inspection; and if the plaintiff would deliver the fish on a particular dock on Long Island, he was not to make up the wantage, as it is termed by the witness, on the inspection and repacking of the fish, which was estimated at 3 barrels in the hundred. But if he delivered them on the dock in New York, he was to make up the wantage. It was agreed that John P. Watrous should inspect the fish. The plaintiff elected to deliver them on Long Island, which was done; that is, they were put upon the dock; but neither of the defendants, nor any one in their behalf, was there to receive them, nor is it pretended that they were actually received. The inspector testified, that before he commenced the inspection, (which appears to have been on the day of the unlading of the fish,) one of the defendants came over to Long Island, and desired him to inform the plaintiff, that they would not take the fish; that they were of a bad quality, and they would not have them; which the witness communicated to Reynolds, the agent of the plaintiff. But the defendants did not direct him to desist from the inspection; and he accordingly completed it.

It is evident that the parties intended that the fish should be inspected before the delivery was to be considered complete. The quantity was altogether uncertain until *they had passed inspection. More or less of them might be condemned. There was nothing said in the

[*87]

agreement as to the quality of the fish. The plaintiff did not warrant them to be of any particular description. Whether they were such then, as the defendants were bound to receive, was not certain until they had been inspected. The very agreement that they should be inspected, implies, that if they were not of a quality which would pass inspection, the defendants were not obliged to receive them. The mere unlading of the fish by the plaintiff, without their having been actually received by the defendants, was not, then, a delivery within the meaning of the statute of frauds. The defendants had a *locus penitentiæ*, of which they availed themselves before the contract was fixed and consummated. Suppose the fish had been destroyed after they were unladen, and before they were inspected; could the plaintiff have recovered for the whole number of barrels, at 19s. per barrel, when, for aught that would have appeared, not one half, nay, not one of them might have been of a quality which would pass inspection? It was a part of the contract that they should be inspected; and until that was done, nothing but an absolute acceptance by the defendants, could be considered a delivery which could vest the property in them. Where anything is to be done by the vendor, in order to ascertain the value, quantity or quality of the goods, the delivery is not complete. (*M'Donald* v. *Hewitt*, 15 John. 349. *Busk* v. *Davis*, 2 M. & S. 397. *Shipley* v. *Davis*, 5 Taunt. 621.) *Bailey and Bogart* v. *Ogden*, 3 John. 399, is also in point. (Vid. p. 420, 1, per Kent, Ch. J.) The case of *Kent* v. *Huskinson*, (3 B & P. 233,) shows that delivery merely, without ultimate acceptance affirming the contract, will not take a case out of the statute. (1 Com. on Contr. 101, S. P.)

*There having been no absolute delivery, the plaintiff could not recover on the general counts, even if the contract had been binding within the statute; as if it had been by note in writing. The plaintiff should have declared on the special contract.

[*88]     The evidence of delivery and acceptance was not sufficient to go to the jury.

The motion must be denied.

                                          New trial denied.