Slosson, J.
Concurred in the conclusion that the judgment should be affirmed.
Duer, J.
As I am unable to concur in the opinion that has now been given, it is proper that I should state the grounds, of my dissent.
Ho express contract was proved upon the trial, nor is it. *307 pretended, that the plaintiffs entered on their work believing that the defendant, Furniss, was a joint owner, and looking to his responsibility as such. The only question, therefore, is whether the evidence warrants us in saying that he was, in fact, a joint owner of the vessel during the time that the plaintiffs performed the work and furnished the materials for the agreed value of which the verdict was rendered. Had the evidence to establish this fact been confined to his acts and declarations during this period, it might have been deemed prima fade sufficient to charge him; but, for the very purpose of showing the origin and nature of his title, the plaintiffs themselves gave in evidence the articles of agreement between him and his co-defendant, Brown, and it is upon the true construction of this agreement that, in my judgment, the whole controversy turns. If he was an owner at all, while the repairs of the vessel were going on, he was so by force- of the agreement, and not otherwise.
• It is said, however, that his acts and declarations during this period may properly be taken into consideration as evidence of his own interpretation of the agreement, and that, by the interpretation he then gave, he ought to be concluded. It may well be doubted whether this evidbnce,. if tending to vary the legal import of the agreement, could be admitted at all;, but waiving the objection, it is manifest that the acts and declarations relied upon were- equivocal in their nature* and; in reality, just as consistent with- that interpretation of the-agreement on which the defendants’ counsel have insisted, and I find myself obliged to adopt,, as with .the supposition, that he claimed to interfere as owner. Considering the agreement as executory, it is plain that he- entered into it in the expectation and belief that the vessel,,if properly altered, might he profitably employed as an ocean steamer, and' with the- intention thus to employ her.
He had, therefore, a direct interest in- knowing that the' necessary alterations were so made as to render her in all respects fit and safe for this new and more hazardous - employment, and this interest is a sufficient explanation of all that he said and did. The terms of the agreement thus construed repel the inference that his conduct might otherwise have *308 justified. It is also proper to be remarked that if the question whether he interfered as owner was at all important, its determination ought to have been submitted to the jury, and that, upon this supposition, the positive direction given to the jury was certainly erroneous.
It is not denied that a purchaser may, by his acts or statements, render himself liable, as owner, to third persons, even when the agreement, as between him and the seller, is executory and has not yet been executed; but to produce this consequence, the act which is relied on must be unequivocal, the statement clear and explicit, and it must also appear that the person claiming redress was induced by these means to expend money, perform labor, or incur responsibility. It is in such cases, only, that an estoppel arises. The principle which governs all the decisions on this subject is lucidly stated by Lord Denman in Pickard v. Sears, 6 A. and E. 474. It is that where one, by his words or conduct, wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time. (Vide also Harris v. Watson, 2 B. and C. 540; Howard v. Dunkins, 2 Camp. 344; Blackburn on Sales, 162, 3.) The principle would apply to this case had it been proved that the defendant by his acts or words wilfully induced the plaintiffs to believe that he was a part owner of the vessel, and that it was in this belief that they commenced and prosecuted their work. But there is no such evidence, nor have we the least right to presume that such was the fact. On the contrary, as by the terms of the agreement, the necessary alterations and repairs of the vessel were to be made by Brown alone, and, in the first instance, at his sole expense, the presumption is that the plaintiffs were employed by him alone, and that by him alone they expected to be paid. I see no reason for believing that in any stage of their work they relied upon the' credit of Furniss, and most assuredly no court or jury could be justified in saying, upon the testimony before us, that this reliance, if entertained, was wilfully induced by his conduct.
Rejecting then the testimony of the witnesses Plass and *309 Perry, if not as inadmissible, yet as certainly immaterial, the next question is, whether upon the proofs that remain, the judge upon the trial ought not to have dismissed the complaint, instead of instructing the jury to render their verdict for the plaintiff.
The objections that were raised upon the argument to the plaintiff’s recovery, even upon the supposition that Furniss was proved tobe a joint owner, I do not propose to examine, although I am not to be understood as saying that these may not deserve a serious consideration. But, for the purposes of this opinion, I hold that the jury were rightly instructed, provided the agreement between Furniss. and Brown by its just construction constituted them joint owners from the time of its execution. If the agreement effected no immediate change of property, I do not at all doubt that the complaint ought to have been dismissed.
It cannot be denied that the words of the first clause of the agreement ending with the words “ payable in fifteen months in Wm. P. Furniss’ notes, favor of said Wm. H. Brown,” import an absolute and present sale. They transfer the property in one-half of the vessel to Furniss, and create a positive obligation on his part for the payment of the stipulated price, $25,000, in fifteen months from the date of the agreement. Ha’d this clause been the whole agreement, no question as to the ownership of Furniss could have been raised. But it is not the whole agreement, and in this, as in all other cases, it is from the whole instrument that we are bound to collect the intention of the parties, and it is the intention thus collected that we are bound to follow. As where the intention is manifest that the property shall immediately pass, the1 words “ agree to sell,” it has been frequently held, must be- construed as “ sells,” so when the opposite intent is equally manifest, the word “ sells ” must be construed to refer not to an immediate,, but to a future transfer. In neither caséis the real intention to> be sacrificed to a literal interpretation of the words that happen, to be used. Hence, if in this case it shall appear from the whole instrument that it was the clear- intention of the parties that the defendant Furniss should not be liable at all for any part of the stipulated price, until and unless the ¡Rhode Island, by the necessary alterations, should be converted into an ocean *310 steamer, it is this intention that we must declare and follow, although as a necessary consequence we shall be obliged to hold, in apparent contradiction to the words of the first clause of the agreement, that the intended sale was not immediate and absolute, but future and conditional.
If the alteration of the vessel in the manner provided was a condition precedent to his liability, it was also a condition precedent to the vesting of the property, since it would be absurd to suppose that it was meant that he should acquire the rights of an owner, when he had neither paid, nor was bound to pay, any part óf the consideration. If his obligation to pay was conditional, so must have been the sale. It is a general rule, that when a contract of sale passes an immediate title, the property, although it may remain in the possession of the seller, and the price is still unpaid, is, from that time at the risk of the purchaser (Blackburn on Sales, pp. 172-3; Pothier Contrat du Yente, p. iv. p. 139). Hence, if the defendant Furniss became a joint owner by the execution of the agreement, the property from that time was at his equal risk, so that if the vessel, without the fault of Brown, had been destroyed by fire or any other casualty before the intended alterations were completed, he would still have been liable to pay at the expiration of the term of credit the whole of the stipulated price. But if the terms of the agreement, considered as a whole, render it certain that in the event supposed no such obligation on his part would have existed, the vessel, until the required alterations were completed, was in no sense, at his risk, and consequently, during this interval, he was in no sense an owner. The questions, therefore, whether by the just construction of the agreement his obligation to pay one-half of the estimated value of the vessel was absolute or conditional, and whether from the date of the agreement he was or was not a joint owner are seen to be identical; nor do I understand that those positions were meant to be denied by the counsel for the plaintiff upon the argument, or are now denied by my brethren.
We have seen that Furniss was to make the required payment for his one-half of the boat in fifteen months in his own notes, meaning undoubtedly that the notes so to he given should have ¡fifteen months to run, not that they should not be given at all until *311 the fifteen months had expired. Tow, if it was the intention of the parties that the property in one-half of the vessel should immediately pass, and a positive obligation for the payment of one-half of the estimated value be created, no reason has been nor, as it seems to me, can be stated, why the notes of Furniss for $25,000, bearing even date with the agreement, and payable in fifteen months from that date, were not immediately given or required to be given. By the express words of the agreement, the sale of one-half of the boat is made “ at the rate of fifty thousand dollars for the whole boat ”—that is, $25,000, payable in Furniss’s notes, and if the sale was meant to be immediate and absolute, so was the obligation to make the payment in the form required ; and the converse of the proposition is equally true, that if the obligation to make this payment was future and conditional, so was the sale.
I, therefore, repeat that had it been intended that Furniss should be liable, in all events, for the payment of the $25,000, his notes for that amount, which were to be the sole evidence of his liability, would have been immediately taken, and by the terms of the agreement would have been required to be given.
The words, however, which immediately follow in the -agreement, the clause that has been quoted, are these: “Totes (i. e. of Furniss) to be dated from the date said steamboat Rhode Island is out of the carpenter’s hands, fit and ready for sea,. coals and provisions excepted.” As it was uncertain when the boat would be out of the carpenter’s hands in the state required, and until then the notes could not be dated, it is plain that until then it was not meant that they should be given. It has been said that this provision operates only as an extension of the term of credit, without affecting the positive obligation of payment which the preceding clause had created, and the observation would be perfectly just had the giving of the notes been postponed to a day certain, thus making it the duty of Furniss to deliver them on that day, whatever might then be the actual condition of the vessel; but not only is the future day upon which the notes are to be given uncertain, but the event is equally so, since the vessel might be destroyed before she was out of the carpenter’s hands, or his task of making her *312 “fit and ready.for sea,” might from various causes never be completed. As the obligation to give the notes is thus made to depend upon a contingent event, I see no escape from the conclusion that, unless the contingency should happen, they were not to be given at all.- In other words, that by the intention of the parties, the vessel being made “ fit and ready for sea” was a condition precedent to the defendant’s liability. Had it been intended to bind “ him,” in all events, to the payment of the stipulated price, it is hardly credible that an express provision fixing the time and mode of payment, in case the vessel should be destroyed, or the necessary alterations not be completed, would not have been found in the agreement. The only provision for payment that we find is conditional. Had any other been contemplated by the parties, I am forced to believe it would have been expressed.
The next provisions in the agreement explain what is meant by the steamboat being “ out of the carpenter’s hands,” and throw additional light upon that construction of the agreement which alone seems to me to be reasonable. They make it the duty of Brown “ to proceed and fit up the Rhode Island, in a suitable manner, to enable her to proceed from Héw York to the Pacific, via the Straits of Magellan, for the purpose of trading along the West Coast of America,” in the manner that Furniss might deem most advantageous. They declare that the outfits for the boat for carpenter, smith, sails, rigging, and steam machinery, are not to exceed $10,000, and to be as much less as possible; and that Furniss’s half of this expense shall “ also be payable in his notes, in favor of Brown, at fifteen months from date said steamboat is done, completed, and out of the workmen’s hands, fit for sea.” It is then provided that Furniss shall be the sole agent for the steamer in the port of Hew York, shall have the sole power of appointing agents in other ports, and shall be entitled to a commission of five per cent, on all receipts and disbursements on account of the vessel..
The first observation which these provisions suggest is, that they render it plain that the notes of Furniss for the $25,000, as well as for his one half of the outfits, were to be payable in fifteen months from their own date, and not from that of the agreement; in other words, were to be payable in fifteen *313 months from the completion of the work necessary to fit the steamer for sea. How, if we turn again to the first clause of the agreement, we find that the language is most explicit, that the sale is made for the one half of $50,000, payable in fifteen months, plainly meaning from the time of the sale. The sale contemplated by the parties is, therefore, a sale upon credit— the term of credit in this, as in all similar sales, being intended to commence when the transfer of the property should be complete. As the subsequent provisions, however, show that the term of credit was not to commence until the outfits, which Brown stipulated to make, should be completed, it seems a necessary conclusion that, until then, the sale, as an actual transfer of property, was never meant to take effect. "Until then the agreement was executory. Substitute “ agrees to sell ” for “ sells,” in the first clause, you render all the provisions of the instrument perfectly consistent—adhere to the literal meaning of the word, you overrule the intention which the provisions that follow clearly manifest.
I next observe that it is evident, upon the face of the agreement, that the sole object of Furniss in making the contract was to secure the employment of the steamer in the coasting trade of the Pacific—and this not merely with a view to the gains that he might derive, as part owner, from such employment—but much more to the large commissions to which, as sole agent, he was to be entitled, a source of profit, which merchants well understand and highly appreciate. He had no motive for becoming the owner, and probably would have declined to be the agent of the vessel, in her actual state. It is, therefore, most improbable that he meant to complete the purchase so as to vest the title and render himself liable, in all events, for the payment of the purchase money before it was ascertained that the vessel, by the necessary alterations, was fitted for her intended employment, and, especially, rendered competent to perform the long and hazardous voyage which must precede her arrival upon the coast of the Pacific. It is most improbable that he meant to deprive himself of the power of rejecting the vessel, and rescinding the entire contract, if the work that was agreed to he done should be, in his judgment, wholly insufficient to render her fit and ready for sea, in the sense of the *314 agreement, that is, to perform the voyage and the service intended. It is certain, however, that he had no such power, if he became a joint owner by force of the agreement, and from its date. Upon this supposition the undertaking of Brown to proceed and fit the steamer for sea was an independent covenant, and its performance, therefore, by him not a condition precedent to the liability of Furniss. Had it been broken the .only remedy of Furniss would have been in an action for damages, but the breach would have given him no right to rescind the contract. It would not have divested his title as owner, nor have released him from his obligation to pay the stipulated price. I find it, however, impossible to believe that this was understood by the parties to be their actual relation, but, on the contrary, am satisfied that it was the understanding of both that Furniss was not to be liable, at all, as a purchaser until the satisfactory completion by Brown of the work which he engaged to perform; and that it was in consequence of this understanding, and with an express view to carry it into effect, that the notes of Furniss were not to be given until the work was done. The sale was, therefore, conditional, and Furniss was not an owner until, by the fulfilment of the conditions, it became absolute. It became absolute when he was registered as owner in January, 1850, and it has not been pretended, and it would be unjust to hold, that the registry had a retroactive effect, so as to render him liable as owner for work previously done, and materials previously furnished. We are bound to presume that he has paid Brown in full, according to the terms of his contract, and it is only a stringent legal necessity that could justify us in saying that he is also liable to the plaintiffs, between whom and himself no contract was made, and no privity is shown to have existed.
Í remark, in conclusion, that with the exception of the word “ sells,” I find no provision or word in the whole instrument at all inconsistent with that construction of the agreement between Furniss and Brown upon which I have insisted.
The division of the consideration to be paid by Furniss into two distinct sums is readily explained. He was willing to pay for one-half of the steamer when fitted for sea, one-half of her estimated value as she then was, and in addition an equal por *315 tion, if not exceeding $5,000,.of the necessary cost of her outfit ; but the cost of the outfits, from the nature of the work to be done, was uncertain, and the parties were unable to fix, to their satisfaction, the sum for which he consented to be liable, and it became necessary, therefore, in order to ascertain the price, to separate the present value and the future cost; but the sums thus separated, when his proportion of the costs was ascertained, formed an entire consideration payable for the same subject, at the same time, and in the same manner.
It may be admitted, that Furniss, while the work upon the steamer was in progress, might have appointed officers, engaged a crew, and made contracts for freight and passengers, but it is not perceived that the admission has any bearing upon the argument. Such contracts, if made by him, were of necessity conditional, since they could only be carried into effect, when the vessel was fitted and ready to commence her voyage to the Pacific. Their existence would furnish no proof that they were made by him as an actual owner, since he had an equal right to make them in the expectation that he would - become so, and it was only, when he became so, that they could be binding at all. It is, however, to be observed that,.if such preliminary contracts were, in fact, made by Furniss, they could properly have been made, under the terms of the agreement, only in his capacity of sole agent for the vessel, -and that this agency might well commence before his ownership.
The clause that “ each owner is to insure his own interest in the vessel” leaves the question, as to the time when the ownership was to commence, exactly where it was, and is, therefore, plainly unimportant. And to assume that Furniss, as owner, might have insured one-half of the boat, as soon as the agreement was signed, is to assume the very question to be decided. If the other provisions in the instrument were not sufficient to constitute him an immediate owner he had then no insurable interest, and any policy effected by him, before his title was acquired, would have been void. In my opinion the clause in question refers exclusively to insurances to be made upon the vessel when employed, as she was intended to be, for the joint benefit of her joint owners, and this seems evident from the clause which follows, which provides that Furniss shall also *316 be at liberty to insure to cover his advances, for certainly no such advances were contemplated to be made, until the vessel should be employed in the manner I have stated.
Although I have not been able to find in the books any case exactly similar in its circumstances to the present, yet there are many cases and classes of cases, which, in my opinion, bear so close an analogy, that-in principle they are not to be■ distinguished. And to some of these I shall now briefly refer.
It is settled law that where any act remains to be done by the seller to goods left in his possession, for the purpose of ascertaining the price,' until the act is done, the property is unchanged, and the goods continue at the risk of the seller (Rugg v. Merrett, 11 East. 210 ; Rush v. Davis, 2 M. and Wels. 396 ; Simmons v. Swift, 5 B. and C. 857 ; McDonald v. Hewitt, 15 John. 349; Rapelyea v. Mackie, 6 Cow. 250 ; Outwater v. Dodge, 7 Cow. 85). Here the steamboat was to remain in the possession of Brown until the completion of the additional work, which he was to perform, and, until this work was done, the price to be paid by Eurniss, as it depended in part upon the actual cost of the work, could not be ascertained.
It is also settled and familiar law, that when the delivery of goods sold, and the payment of the price, whether in cash or in notes can make no difference, are to be contemporaneous acts, the property, until such delivery and payment, remains in the seller (Bussey v. Barnett, 9 M. and W. 312; Bishop v. Shillito, 2 B. and Al. 329, n.; Palmer, v. Hand, 13 John. 434; Chapman v. Lathrop, 6 Cow. 110; Lupin v. Marie, 6 Wend. 77; Levin v. Smith, 1 Den. 571). Here Brown was entitled to the exclusive possession until the vessel was fitted for sea ; the exclusive possession and control were then to pass to Eurniss, who was at the same time to make the stipulated payment by his notes. Had Eurniss, when he obtained the sole possession, refused to deliver his notes, the decision of the king’s bench in Bishop v. Shillito seems conclusive to show that Brown as owner could have maintained an action of trover, or. replevin, but this he could certainly not have done, if the property vested in Eurniss, by force of the original agreement.
It is not doubted, that goods at sea may be the subject of an immediate sale, and when the price is paid, or there is an obli *317 gation to pay it upon a day certain, the property vests at once in the buyer, and the arrival of the goods is at his risk; but if the price is not to be paid until the arrival of the goods, there is no change of property until their arrival, and no liability on the part of the buyer. The sale is conditional, and if the goods fail to arrive, the contract is at an end. (Boyd v. Siffken, 2 Camp. 326; Russell v. Michell, 3 Wend. 112; Shields v. Pettee, 2 Sand. S. C. R. 262.) In Shields v. Pettee the rule was applied by this court, although in the bought and sold note, which was the evidence of the contract, the condition of arrival was not stated, and the words were those of a present sale, and this decision was affirmed in the Court of Appeals.
The principle of these decisions is, that when the payment of the price depends upon a contingent event, the property does not pass until the contingency happens, and when it fails to happen, the contract is dissolved. The application of the principle to the case before us is obvious, and seems to be decisive.
Perhaps the two cases that bear the nearest resemblance to the present, are Clarke v. Spence, 3 Ad. and Ell. 448, and Laidler v. Burlinson, 2 M. and Wels. 602. In each case the contract of sale related to a ship then on the stocks, and which the seller and builder contracted to finish, and it was admitted in each, that the subject of the contract being the particular ship described, was definite and ascertained. In Clarke v. Spence the price was to be paid in instalments, as successive portions of the work should be completed, and the court held that the property vested in the successive portions as the instalments became due and. were actually paid. In Laidler v. Burlinson no part of the price was to be paid until the ship was finished, and the court, upon this ground distinguishing the case from Clarke v. Spence, held that the property remained in the seller. I know no reason why this decision is not to be regarded as a direct authority in favor of the defendant. Here the Rhode Island, in reference to the purpose for which she was bought, was unfinished. Brown, the seller and builder, agreed to finish her, and until finished no part of the price was to be paid by Eurniss. (Vide Andrews v. Durant, 1 Kernan, 35.)
I shall make no remarks on the decision of the Supreme *318 Court in Furniss v. Brown (8 How. P. R. p. 59), except to say that the facts in that case were materially different, since it .distinctly appeared that by the fulfilment of the conditions the sale had become absolute. The decision I therefore admit to have been correct, although all the reasoning of the learned judge by whom it was delivered is far from commanding my unqualified assent.
It follows from the observations I have made, and the ■ authorities I have cited, that in my opinion the complaint ought to have been dismissed upon the trial, and consequently that the verdict ought now to be set aside and a new trial be granted. But as my brethren think otherwise, the judgment upon the verdict is affirmed, with costs.