Comstock, J.
The plaintiffs’ right to recover must depend on the construction of the agreement between the defendants Furniss and Brown, concerning the sale of the boat Rhode Island. If the agreement amounted to an executed sale of one-half the boat, then the defendant Furniss became a joint owner, and is jointly liable with Brown for the repairs and alterations in question, If, on the other-hand, it was executory merely and passed no title, he cannot be charged as owner, and there is nothing else in the case upon which his liability can arise. The evidence, indeed, shows that, while the repairs and alterations were going on, he was present on one or more occasions, examined the work as it proceeded, and gave some directions which were followed. But these acts were natural under the circumstances, and may be appropriately referred to his relation *615 to the boat under either construct! on of the contract. As soon as the repairs were finished he was to become, if not already, a joint owner, he was to sail with the vessel to the western coast of America, and, in general, was to be the managing owner. He therefore had a direct interest in attending to the repairs and alterations, so as to fit her for a new and more hazardous employment. It should be added that there is no evidence tending to show that the work was done on the sole or joint credit of Furniss, or that the plaintiffs were at all influenced by any act or declaration on his part, except, perhaps, as to the manner in which some of the alterations were made On the contrary, the presumption clearly is that, as between Brown and him, the former was to fit out the vessel for her new employmenthe contracted with the plaintiffs on Ms own account to put her in the condition in which he had engaged to deliver her.
The question then is, whether the written agreement concerning the vessel passed the title to one-half immediately to the defendant, and this inquiry is by no means free from difficulty. There is no doubt that the phrase which stands at the commencement of the contract, “ William H. Brown sells,” &c., imports of itself an executed sale. But the books furnish abundant evidence that phrases of this kind are used in a very loose sense, and that their literal signification is often overruled by the tenor and purpose of the whole instrument. So a party to a contract may say “ he agrees to sell,” and yet the intention be entirely manifest that the title shall pass immediately. Such phrases are quite inconclusive, and are often made to yield to other terms of the contract evincing a different design.
Looking thus at the agreement the first inquiry which presents itself is, whether Furniss placed himself under any obligation to pay for one-half the boat until she should be fitted up and prepared for the new service intended. I think he did not. He was to pay $25,000 in fifteen months by his “ notes to be dated from the date said steamboat *616 Rhode Island is out of the carpenter’s hands, fit and ready for sea,” &c., and Brown was to proceed and fit her up in a suitable manner for a voyage to the Pacific ocean, and for trade on the western coast of America. When were the notes to be given? The fair interpretation of the language is, that they were to be given when this engagement on the part of Brown was fulfilled, and as Furniss was not to pay except by his notes, the consequence must follow that no obligation arose on his part until the condition should be performed. This construction is not only the most obvious one-from the language used, but it harmonises better than any other with.the general purpose of the contract. The “ Rhode Island ” was, at the time, fitted for transportation of passengers on the Sound, but this was not the service in which Furniss proposed to engage. He contemplated sailing her to the Pacific ocean, and for that service he wished to purchase an interest in herbut as that demanded a further expenditure of some $10,000 in repairs and alterations, he might with great reason require the necessary changes to be made before taking the title and placing himself under so large an obligation for the purchase money. I am greatly mistaken if this is not the prevailing idea of the contract.
To bring the question to a still closer test, it may be supposed that Brown had totally refused to perform his part of the agreement, or that the vessel was destroyed by fire. Would Furniss have been bound to give his notes for the $25,000 ? It seems to me clearly, that he would not. Against these contingences he protected himself in the clause providing that the notes were to be given when the boat was “ out of-the carpenter’s hands fit and ready for sea.”
The clause concerning the outfit alterations, &c., and expressing the obligation of Furniss to pay one half of that expense not exceeding $10,000, is in harmony with the views ' which have been stated. His notes upon this part of the contract were also to be given when the work was done and *617 on fifteen months time, in other words, they were to be given and payable at the same time as the notes for the estimated present value of the vessel. This certainly has a tendency to show, that t'he purchase, and the further labor and expense to be incurred by the seller to fit her for the uses intended were not matters considered independently by the parties. The division of the entire sum into two parts is not difficult to account for. The value of the vessel in her present condition could be estimated, but as the cost of preparing her for an ocean steamer, to be employed on a distant service was unknown, the parties were therefore unable to state in one sum the whole price to be paid. . To become the owner of one half, Furniss was willing to assume a present value as the basis of the price he was to pay, and then to add one half of the future expenditure required within the limit specified, Upon this theory I think the parties contracted, and according to it, the title would not pass upon the ground distinctly, that the price of the boat was unascertained until further acts should be done by the seller. (Ward v. Shaw, 7 Wend., 404; Outwater v. Dodge, 7 Cow., 85; McDonald v. Hewett, 15 John, 349; Rusk v. Davis. 2 Maul, & Sel., 397).
If I am right in the conclusion that the contract imposed upon Furniss no obligation to pay any part of the price until the boat was completed by the seller in the manner specified, then it is quite clear that he had not acquired and did not hold the title while the work in question was in progress. If we say otherwise, then we must adopt the absurd conclusion that while his obligation to pay had not arisen, and might never arise in consequence of the non-perfonnance of the condition precedent, he was nevertheless clothed immediately with all the rights of an owner. He might even refuse to give the notes after the other party had fully performed the condition, or he might, in the meantime, Become a bankrupt, so that they would be of no value when given, and yet the title in him wnuld be perfect. It is true *618 where there is % complete sale of goods, without credit, the title is said to pass before payment and without delivery but the vendor is not bound to deliver until payment is made, This is sometimes called a lien for the price. But the plaintiffs’ theory of the present case is that one-half the boat was both sold and delivered at the making of the contract. If not delivered at that time, and certainly the terms of the contract left her in the exclusive possession of Brown then plainly the title did not pass, because there were further acts to be done before the defendant was bound to accept a delivery, or give his notes in payment. (2 Kent Com., 495, and note.)
Upon the best consideration I can givó the case, my conclusion is that the contract was executory, that it left neither of the parties in the hands of the other, that Furniss was not bound to pay the $25,000 until such a boat was delivered as the agreement called for, and that Brown did not part with the title until he had completed the vessel and the notes were given in payment therefor.
The judgment should be reversed and a new trial granted.
Wright, J.
Furniss and Brown were sued as joint owners of the steamer Rhode Island, for labor and materials furnished in fitting up the vessel. To fix a liability upon Furniss, the plaintiffs gave in evidence an agreement entered into on the 1st November, 1849, and before the work was commenced, between Brown and Furniss in relation to the purchase, alteration and fitting up of the vessel as an ocean steamer. Some evidence was also adduced tending to show that Furniss was occasionally at the dock where the vessel laid whilst the work was progressing, and twice directed the manner in which certain work should be done. The defendant Brown employed the plaintiffs to make the alterations, and they were completed, with the exception of three days’ labor, prior to the 20th January, 1850. This was the whole case made by the plaintiffs. The judge refused to dismiss *619 the complaint as against Furniss, and subsequently directed the jury to find a verdict against both of the defendants for the amount of the account claimed.
There was obviously no pretext for a recovery against Furniss, unless he was a joint owner of the vessel when the plaintiffs performed the work and furnished the materials at the request and on the employment of Brown, and whether he had a joint interest at that time depended whqlly upon the construction to be placed on the contract of November, 1849. If, as was held by the court below, that agreement is to be construed as an absolute sale of one half of the steamer, in the condition she was at its date, and the title immediately vested, then Furniss was a joint owner and prima facie liable with Brown for the cost of the alterations and repairs. But if it be apparent, from the whole instrument, that a present, unconditional sale was not in the contemplation of the parties, and it was not intended that an interest in the property should vest in Furniss until the vessel was fitted up by Brown, ready for the joint adventure in which she was to be employed, then Furniss was in no sense an owner when the plaintiffs’ demand accrued.
I am inclined to regard the contract as wholly executory, although the word “sells” is used in the first clause, which, if standing alone, would import a present, unconditional sale, and so far an executed agreement. But it is connected with other terms and provisions leaving it quite satisfactory to my mind that it was not the intention of the parties that there should be a joint ownership of the vessel until she was fitted and ready for the joint adventure contemplated by the agreement.
It is apparent that the controlling purpose of entering into the contract was the joint employment of the vessel in the coasting trade. Apart from this, Furniss neither desired an interest in a steamer only fitted and furnished for the transportation of passengers on the Sound, nor was it necessary that she should be altered or refitted. The refitting *620 looked to the controlling purpose of the parties. Brown was the owner of the boat. He was a ship-builder, and she was in his sole possession. Furniss was a merchant. Under ' these circumstances, and having solely in view the joint speculation, the agreement was concluded, Furniss was to become a purchaser of one-half the boat, Brown fitting her up in a suitable manner to proceed to the Pacific and trade along the west coast of America, or in the rivers of the same, . as might be thought by Furniss the most advantageous. He was to furnish boats, and provide the necessary carpenter’s work, smith-work, sails, rigging and steam machinery to adapt her to the Pacific trade, at an expense not to exceed $10,000. Furniss was to be the sole agent of the steamer in the port of New-York, and to have the appointment of all other agents on the Atlantic and Pacific coasts; to receive a commission on all receipts for freight and passengers ; and account, from time to time, for all money that might come into.his hands, to Brown or other owners of the boat, first paying himself all advances made on her account. The price or valuation of the vessel, as she was at the date of the agreement, was fixed at $50,000, and Brown was to make ■repairs and alterations, to fit her for the new business, at a cost not to exceed $10,000 more, and as much less as possible. Furniss was to pay to Brown, for., one-half of the vessel, in her original condition, the sum of $25,000, in his notes, at fifteen months, not to be given and dated cotemporaneously with the agreement, and to run from that time, but after Brown had caused the alterations and repairs to be made, and she was “ fit and ready for sea, coals and provisions excepted.” So, also, Furniss wras to pay (to the extent of $10,000 on the whole) one-half of the expense incurred by Brown in fitting the vessel for ocean service; such payment to be made in his notes, at fifteen months, to be given and dated, and to run, from the time she was “ out of the workmen’s hands, and fit for sea.” The vessel was to continue under the control, and in the possession of *621 Brown, until the outfits which he had stipulated to make were completed. It was evidently not within the intention of the parties that Furniss should pay for half the steamer, or half, the expense of the outfit, unless she was fitted for the purpose in view; nor did he obligate himself to do so. He was to make payment in his notes, not to be immediately given, but after she was fitted and ready for sea, and from that time they were to run for fifteen months. There was no obligation resting on him to pay, in the form stipulated, one-half of the estimated value of the vessel, until Brown had made the changes which he agreed to effect. Had those changes never been made, Furniss could not have been called on to give his notes, or make payment. His obligation to pay was, by the agreement of the parties, to depend on a contingent event, and unless that contingency happened, it was not their intention that his notes should be given at all. It seems quite plain to me, that the parties intended to make the alterations to be effected by Brown a precedent condition to the transfer of title to Furniss, and until the vessel was ready to be delivered to the latter, “ fit for sea,” it was not meant that the sale should take effect. Brown was to change the character of the vessel from a Sound to an ocean steamer, and when this was done, and not before, the agreement contemplated that the entire possession of the boat was to be delivered by Brown to Furniss. The delivery of the vessel, and the payment of one-half of her estimated and then fully ascertained value in her new condition, were to be concurrent acts. It was only when the event occurred of her being fit and ready for sea, that the precise consideration to be paid by Furniss could be ascertained. It could be no more than $30,000, and it might be less. If the cost of the alterations exceeded $10,000, Brown was to be responsible beyond the sum of $5,000. Had the vessel been destroyed by fire, before she was fitted and ready for sea, I cannot doubt that it would have been *622 wholly Brown’s loss, and Furniss (the contingency never happening upon which he was to make payment) would not have been liable to him. for the price. As Furniss’ obligation to pay was made conditional, it is clearly to be inferred that the parties intended that the title to one-half the vessel should not pass to Furniss until the condition was performed. The sale contemplated was one upon credit; the term of credit to commence when the transfer of the property should be complete. The term of credit was not to commence until the outfits were completed by Brown, nor was there to be any change in the possession of the vessel, nor Furniss obligated to do anything to consummate the sale. If the words “agrees to sell” were substituted in the first clause of the instrument for the word “sells,” there would scarcely be a question; as then all the provisions would be entirely consistent, and point only to the intent I have indicated. An adherence to the literal purport of the word “ sells ” would overrule the intention which the provisions of the agreement, as a whole, plainly indicate. In the construction of a written instrument it is a well established rule that to give effect to the intention of the parties, courts may transpose or even substitute words for those used in the writing.
The intention, it seems to me, is clearly manifest, that the title to half the boat was not to vest in Furniss until she was fitted out for the new service, and ready to be delivered into his sole possession, and he required to make payment. Until then, the agreement of sale was executoiy. It follows that there was no absolute sale in presentí; and when the work was done and materials furnished by the plaintiffs, in the alteration of the vessel, Furniss was not a joint owner, nor did he have any vested interest in her. As against him, the plaintiffs did not make a prima facie case for a recovery.
The judgment of the superior court should be reversed, and a new trial ordered.
*623 A. S. Johnson, Selden, Mitchell and T. A. Johnson, Js., concurred in reversing the judgment and ordering a new trial.
Denio, C. J., dissented, and was in favor of affirmance.
Judgment reversed.