## BAILEY *v.* SMITH.

In an action for goods sold and delivered, and goods bargained and sold, the proof was of a bargain for 2000 telegraph poles, and that the plaintiff had, at the time and place of delivery, 2130 of such poles, and notified the defendant that he was ready to deliver them and receive the price, to which the defendant replied, admitting that the plaintiff had the poles, and said he would settle for them soon; but before any thing farther was done, the poles were carried away by a freshet:—

It was *held*, that on this evidence a nonsuit was rightly directed, upon the ground that the separation of the 2000 from the entire lot not having been made, the title to them had not vested.

THIS was an action to review an action of assumpsit, the first count being on an account annexed, for two thousand telegraph poles, at twenty-five cents each, $500, and interest on the same, $50; and the second count for $550 for other two thousand telegraph poles,

bargained and sold by Bailey to Smith at his request.    Original writ dated April 14, 1854, and the writ of review dated February 16, 1859.    Plea, the general issue.

On the trial the original plaintiff offered in evidence, among other things, the contract between the parties in regard to said telegraph poles, as follows: " This memorandum of an agreement entered into this eleventh day of March, 1852, between John Bailey, of Columbia, New-Hampshire, of the first part, and Francis O. J. Smith, of Portland, by his agent, A. P. Robinson, of Portland, duly authorized, of the second part, witnesseth, that the said Bailey hereby agrees to furnish and deliver on the bank of the Connecticut river, near the track of the Atlantic and St. Lawrence Railroad, and in the neighborhood of the mouth of the Nulhegan river, two thousand merchantable cedar telegraph poles, each twenty feet long, and not less than five inches in diameter at the top or small end; said poles are to be delivered on or before the first day of August next, or as soon thereafter as the stage of the water will permit; and the said Smith, on his part, hereby agrees to pay to said Bailey for said poles, when delivered to the acceptance of said Robinson, the sum of twenty-five cents each.    Witness our hands the day and year first above written, at Stratford, New-Hampshire.

A. P. Robinson
Agent for Fr⌐         ⌐. J. Smith.
John Bailⴌ'

" In presence of Levett Carter."

There was evidence tending to show that the ⌐'        ⌐ere cut and run down the river as soon as the stage of the w.        would permit; that they were drawn out of the stream and laio near the railroad track in the neighborhood of the mouth of the Nulhegan river; that there were other sticks of timber with them, designed for posts; that twenty-one hundred and thirty cedar poles were counted out, twenty feet long, and not less than five inches in diameter at the top end; that no mark was put upon them, and a stranger would not be able to designate them from the other sticks of timber, but the plaintiff's agent, who counted them, would be enabled so to do.

The poles laid near the railroad track from the fall of 1852 to the spring of 1853, when they were carried away by a freshet.

John Sweet, a witness on the part of Bailey, testified that soon after the poles were hauled out of the river and counted as aforesaid, he heard a conversation between Charles Bailey, the plaintiff's agent, and the said A. P. Robinson, the defendant's agent; that Bailey told Robinson he had got the poles ready, and wanted pay for them; that he, Bailey, did not want to take the risk of the water, and that Robinson said that he was satisfied he had got the poles, and he would settle with him in a few days.

Charles Bailey testified that he told Robinson that he wanted the pay for the poles; that Robinson said he would see to it immediately, and have them counted and paid for; that he was satisfied the poles were there; that he would see Mr. Smith and have him attend to it; that this conversation was in the last of November.

To this evidence it was objected that it did not show a sufficient

delivery or acceptance, and the defendant moved for a nonsuit, which was granted; to which the plaintiff excepted.

*Burns & Fletcher*, for the plaintiff.

*Benton & Ray*, for the defendant.

BELLOWS, J. The poles appear to have been ready for delivery at the time and place designated, and the question is, were they delivered so as to pass the title between the parties, and enable the plaintiff to maintain his suit for goods sold and delivered; or was enough done to support his count for goods bargained and sold.

His proof tends to show 2130 poles of the kind agreed upon, ready for delivery, and notice to the defendant; but there is no evidence from which the jury could have found that the 2000 were designated and set apart from the larger bulk, nor that there was an actual delivery of the entire bulk to the defendant. It is a case, then, where, as between the buyer and seller, something remained to be done before the property passed, namely, the designation and setting apart of the 2000 from the entire quantity, and it comes within the principle recognized in *Ockington* v. *Richey*, 41 N. H. 275. As it was said in that case, if by the agreement of the parties nothing had remained to be done before the title passed, but the whole had actually been delivered, with proper stipulations for the return of the surplus beyond the 2000, the case would have been different, as was held in *Page* v. *Carpenter*, 10 N. H. 77. But there is no such evidence here; on the contrary, upon notice by the plaintiff's agent, the defendant's agent said he would see to it immediately, "and have them counted out and paid for." Upon this evidence we think the jury could not have found a delivery, and therefore as no title passed to any specific 2000 poles, the count for goods sold and delivered is not sustained. *Hanson* v. *Meyer*, 6 East 614; *Seminary* v. *Swift*, 5 B. & C. 57; *Fuller* v. *Bean*, 34 N. H. 290; *Mason* v. *Woodman*, 22 N. H. 172; *Warren* v. *Buckminster*, 24 N. H. 336; also, *Shepard* v. *Pressey*, 32 N. H. 49.

Nor can the count for goods bargained and sold be maintained, because, although a delivery in such case is not essential, yet the sale must have been complete, and the title must have vested in the defendant. To complete the sale between the parties, delivery is not necessary, but the sale must be otherwise complete; for if any thing remain to be done as between them, before a present right of property vests in the buyer, the count for goods bargained and sold can not be maintained; but the action should be special, for refusing to receive and pay for the goods which the defendant has agreed to purchase. 1 Ch. Pl. (10 Am. Ed.) 347, and notes; 2 Ch. Pl. 264, and notes; *Atkinson* v. *Bell*, 8 B. & C. 277; *Outwater* v. *Dodge*, 7 Cow. 85. So it is said that a count for not accepting goods sold will not lie unless there has been an actual sale; and the property in the goods has become vested in the defendant. 2 Ch. Pl. 265, in note; 4 Cow. Phill. Ev. 114, and note 327 on page 209 of notes; *Elliott* v. *Pybus*, 10 Bing. 511, where it is said by *Tyndal*,

C. J., that the question is, has the property passed to the defendant; if it has not, so that he can maintain trover for it, the count for goods bargained and sold will not lie.

The title to the goods in this case not having vested in the defendant, there must be

*Judgment on the nonsuit.*