## De Witt *vs.* Morris & Platt.

On a *writ of replevin* for *about* 400 *tons of bog ore,* the sheriff is not authorized to deliver to the plaintiff 720 *tons. It seems,* that the sheriff would have been justifiable in refusing to execute a writ thus vaguely describing the property.

Where, however, the sheriff did execute such a writ, and delivered to the plaintiff 720 tons of ore, and the defendants obtained judgment of return, and executed a *writ of inquiry* to assess the value of the property and damages for detention ; *it was held,* that it was competent for the plaintiff to show, *in mitigation,* that shortly after the delivery of the property to him, the defendants repossessed themselves of the greater part thereof.

Motion to set aside an inquisition. The plaintiff sued out a *writ of replevin,* returnable in July term, 1830, in which he complained that the defendants had taken and unjustly de-

tained certain goods and chattels, *to wit, about four hundred tons of iron ore, commonly called bog ore;* wherefore the sheriff of Schenectady was commanded to cause the *same goods and chattels* to be replevied and delivered to the plaintiff without delay. The sheriff made return on the back of the writ, that he had caused the *within property* to be replevied and delivered to the plaintiff. Subsequently the defendants sued out a writ of *retorno habendo* and of *inquiry of damages,* returnable in July term, 1833. In this writ the writ of replevin was set forth, and it was recited that the defendants had obtained a judgment of *discontinuance,* that they should have a *return* of the iron ore, &c. and ought to recover their damages, &c. ; and the sheriff was commanded to cause the *said iron ore* to be returned to the defendants, and to enquire as to the damages, by the oath of twelve good and lawful men. To this writ, the sheriff returned that he had no such iron ore in his custody, and had not been able to find it in his bailiwick ; he also returned an *inqusition,* under his seal and the seals of twelve jurors, by which it appears that the damages of the defendants had been assessed at the sum of $816,86. On the 12th August following, the defendants obtained a rule permitting them to issue a new writ of enquiry, commanding the sheriff to ascertain the *value of the iron ore* taken from the defendants, together with the *legal interest thereof,* from the time the ore was taken out of the possession of the defendants. A writ of enquiry was accordingly issued, returnable in October term, 1833, by virtue whereof an inquisition was taken, and the damages of the defendants assessed at $1209,45. It appeared, that in arriving at this result, the jurors allowed the defendants for 720 tons of ore, delivered to the plaintiff under the writ of replevin, at the rate of $1,37$\frac{1}{2}$ per ton, and added three years and two months interest. The counsel for the plaintiff insisted, before the inquest, that the defendants' claim must be limited to the *quantity of ore specified in the writ of replevin;* and he also offered to prove that a few days after the service of the writ of replevin, the defendants *repossessed themselves* of the *greater part of the ore* delivered to the plaintiff by the sheriff, and converted the same to their own

NEW YORK, use; which evidence was objected to by the defendants, and
May, 1835
excluded by the sheriff. It also appeared, that on the taking
De Witt     of the *first inqusition*, the jury allowed the defendants for up-
v.          wards of 700 tons of ore.
Morris.

R. J. Hilton, for the plaintiff.

J. L. Tillinghast, for the defendants.

*By the Court,* NELSON, J. The writ of replevin described
the property to be taken in the following words : "Goods and
chattels, to wit, about four hundred tons of iron ore, common-
ly called bog ore." Under this writ the sheriff replevied 720
tons. The writ is defective, in not being more specific in the
description of the chattels to be taken, 2 *R. S.* 523, § 6 ; but
that question cannot now arise. The sheriff should have re-
fused to execute the writ. Assuming it regular, what num-
ber of tons was the sheriff authorized to replevy under it ?
*About four hundred tons* clearly does not mean *seven hun-
dred and twenty tons,* nor does it mean five hundred tons. It
may be construed to mean more than 400, but the sheriff would
have been justified in limiting the quantity taken to an amount
not exceeding that number, and this would have been not only
the safest, but I think the soundest interpretation of the terms
of the writ. All over four hundred and fifty, at most, was
taken without any authority, and the sheriff, and the party if
he directed, or co-operated with him, are individually respon-
sible. Any number of tons over 450 would be *about five-hun-
dred,* instead of about four hundred, and ought not to have
been taken, because not coming within the description. If
the ore had been identified in the writ, so as to have enabled
the officer to replevy it without regard to the quantity of tons
mentioned, quantity might have been rejected as surplus-
age. But the only identification is by the number of tons,
and the authority of the officer must be thereby determined.
It follows, from the above view, that both inquisitions returned
in the case are erroneous, and must be set aside. The first,
which was taken under the 2 *R. S.* 531, § 53, assessing the
damages by reason of the *detention,* and the second, taken un-
der section 55, assessing the *value* of the property. These

inquisitions were found upon the assumption that 720 tons NEW YORK, had been rightfully taken and delivered to the plaintiff, under May, 1835. the writ.

De Witt
v.
Morris.

The plaintiff, on the inquest of value, offered to shew, in mitigation, that soon after the property was replevied, the defendants took and converted to their use the greater part of the ore. This evidence was objected to, and overruled. The sheriff, I think, erred.. Under the former law, upon a return of *elongata* to the writ of *retorno habendo*, a *capias in withernam* issued to take the beasts of the plaintiff. When the plaint issued out of the county court, there was an inquest held by the sheriff, to ascertain the truth of the elloignment before the capias issued. In the higher courts, the return of the officer was deemed satisfactory. *Gilbert on Repl.* 80. Now, if it had appeared, by the inquest, or the sheriff's return, that the property was in fact in the possession of the defendant, or had been returned to him, it is manifest no *capias in withernam* could issue. The only object of this writ would have been already complete, and the only damage unsatisfied would be that of detention. So the equivalent remedy by assessment of value must be subject to the same modification. All that can be required to make the defendant whole in this case is the value of the quantity not retaken by him, and damages for detention. Besides, the action being, in many cases, a substitute for trespass, *de bonis asportatis*, the rule in that action, which allows evidence of the restoration of the property in mitigation of damages, is strictly applicable.

Inquisitions set aside, with costs to abide the event; and let writ of inquiry issue, to assess both value and damages at the same time, in pursuance of 2 *R. S.* 531, § 53, 55.