## OLYPHANT *vs.* BAKER.

A contract for the sale of goods, where nothing remains to be done by the seller, before making delivery, transfers the right of property, though the price has not been paid, nor the thing delivered.

Where the plaintiff sold to the defendant a quantity of barley in a store house at a certain price per bushel, and it was to be weighed, or taken at the weight stated on the plaintiff's books, as the defendant might choose; and the plaintiff afterwards presented a bill stating the aggregate amount of the purchase money, upon which the defendant made a partial payment and acquiesced in the statement of the amount; *held* that the quantity being thus ascertained, nothing further remained to be done, and the title to the barley had passed to the defendant.

Where, on the sale of a parcel of barley in the vendor's store house at so much per bushel, the quantity to be subsequently ascertained, the vendor agreed that it might remain there until a future day named, when his right to the possession of the store house would pass to another person; and the vendee agreed with the party who was to succeed to the possession of the building for the storage of the grain after the day mentioned, and after such change of possession, the building with the grain was destroyed by fire; *held* that there had been a delivery, that the title had passed and that the loss fell on the vendee.

MOTION to set aside the report of a referee. The action was assumpsit for the balance of the purchase price of a quantity of barley. Plea, *non-assumpsit.* A contract in writing, signed by the defendant only, was given in evidence by the plaintiff, as follows:

"I hereby agree to sell seven hundred bushels of barley, (or what I may have in store at Mr. P. Church, jr.'s warehouse,) to Abner Baker, [the defendant,] at the rate of forty-five cents per bushel; to be delivered when said Baker may call for it. I agree to hold the barley free of storage until the first day of January next. The barley is to be weighed out of the warehouse, unless Mr. Baker shall agree to take the weight on the books. I hereby acknowledge the receipt of one hundred dollars on the above contract. Mount Morris, Dec. 15, 1845."

The plaintiff owned the warehouse, called P. Church, jr.'s in the contract, and before the contract was made had rented it

Olyphant *v.* Baker.

to one Camp from and after the first day of January then . next; and of this he informed the defendant when the contract was made. On that day, or very soon afterwards, the defendant saw Camp and agreed with him for the storage of the barley, for him, the defendant, from the first of January until the opening of navigation the ensuing spring. Camp took possession of the warehouse under his lease on the first day of January, the barley still remaining in it. After this arrangement with Camp and on the 22d day of December, the plaintiff's clerk called on the defendant with a bill of the barley, and asked for payment. The defendant paid him $300 and promised to pay the balance—$95—the next day. The witness could not say that the bill mentioned the number of bushels of the barley, but it contained the aggregate amount that it came to, and the witness did state to the defendant that there was a little over 1100 bushels of it. The exact quantity he said, was a little over 1112 bushels. About the middle of January, the building with the grain in it was accidentally destroyed by fire.

The referee reported in favor of the defendant.

*R. P. Wisner & O. Hastings,* for the plaintiff, moved to set aside the report.

*E. D. Smith & E. Griffin,* for the defendant.

WHITTLESEY, J. The sole question here is whether there was a delivery of the barley to the defendant, who was the purchaser. In many cases of sales of personal property it is a very nice and difficult question to determine whether there has been a delivery—whether the title has passed. In this case the contract was executory. The quantity of barley was uncertain, and as it was sold by the bushel, the whole price could not be known until the quantity was ascertained. The seller was entitled to immediate payment, at any rate he was entitled to payment before he parted with the property. The purchaser was entitled to the delivery whenever he chose to ask for it,

but he could not claim to have it delivered without paying the price. He was entitled to have it weighed out to him, if he chose, for the purpose of ascertaining the exact quantity and aggregate amount of the purchase money. He could, however, if he chose, take the weight as it appeared from the books. If he had taken such weight as the true quantity, and paid the whole price according to such weight, the barley would have been deemed to have been delivered from the time of such payment. (*Lansing* v. *Turner*, 2 *John.* 13.)

But there was a sale by weight or measure at so much per bushel, and in such cases, as it is necessary that the thing should be weighed or measured before the price can be ascertained, the contract is not consummated so as to change the property until such weighing or measurement is had; but it remains at the risk of the vendor. (*Pothier, Traite du Contract de Vente, part* 4, 308.) In our reports it is held that when, after a sale of goods, some act remains to be done by the vendor before delivery, the property does not vest in the purchaser, but continues at the risk of the vendor. Such previous act may be counting, weighing, measuring, or inspecting, &c. (*McDonald* v. *Hewett*, 15 *John.* 349 ; *Outwater* v. *Dodge*, 7 *Cowen*, 85 ; *Hanson* v. *Meyer*, 6 *East*, 614 ; *Rapelye* v. *Mackie*, 6 *Cowen*, 250 ; *Russell* v. *Nicoll*, 3 *Wend.* 112 ; *Ward* v. *Shaw*, 7 *id.* 404 ; *Downer* v. *Thompson*, 2 *Hill*, 237.) Even if there has been a delivery to the vendee, and any thing remains to be done preparatory to ascertaining the price of the goods, the delivery does not divest the title of the vendor until the price be ascertained and paid. (*Andrew* v. *Dieterich*, 14 *Wend.* 31.)

In this case it does not clearly appear that the precise quantity of the barley was ascertained and communicated to the defendant. The witness says, indeed, that there were 1112 bushels and some pounds, and that he made out a bill and presented it to the defendant; but he does not state that the precise quantity of the barley was put in such bill; and on his cross-examination he states that he is not quite certain that he stated the precise amount of the barley in the bill, but he did

Olyphant v. Baker.

state to him there was a little over 1100 bushels. The defendant took the bill, paid the greater part, and promised to pay the balance the next day. Is this evidence that the defendant agreed to take the weight as it appeared on the books? If it is to be so taken, as no objection was made to the weight in the bill, is it to be deemed that the plaintiff assented to parting with the property until the balance of the purchase money was paid? The plaintiff had a right to insist that the whole price should be paid before the property was delivered, and if the defendant had assumed to dispose of it before the payment of this balance, or had undertaken to remove it, and it should be found that he was insolvent, could not the plaintiff claim the property?

·The making of the bargain for the storage of the barley after the first of January was doubtless a strong circumstance, but was not of itself conclusive. There is a class of cases which determine that though something remains to be done to ascertain price, &c. yet if it clearly appears to be the intention of the parties that the property shall be deemed to be delivered and the title pass, it will be so held. (*Macomber* v. *Parker*, 13 *Pick.* 178; *Riddle* v. *Varnum*, 20 *id.* 280.) There does not appear to be any thing in this case to show any different intention of the parties than that which the law presumes from their acts. The case is not analogous to those above referred to. It is one of some nicety, but on the whole I think the motion to set aside the report of the referee should be denied.

BEARDSLEY, Ch. J. It is a general rule of the common law that a mere contract for the sale of goods, where nothing remains to be done by the seller before making delivery, transfers the right of property, although the price has not been paid, nor the thing sold delivered to the purchaser. (*Long on Sales*, 42; *Ross on Pur. & Vend.* 1; 2 *Kent*, 492; *Simons* v. *Swift*, 5. *B. & C.* 857; *Tarling* v. *Baxter*, 6 *id.* 360.) In this case the price per bushel for the barley was specified in the written contract, although the precise quantity sold was not then known to the parties; that, according to the contract, was to be ascertained by weighing the barley, unless the defendant should

Olyphant *v.* Baker.

agree to take it as the weight might appear on the warehouse books. When the contract of sale was made, it was impracticable to determine what amount, in the whole, was to be paid by the purchaser, for that would depend upon the quantity of barley sold, to be ascertained in one of the modes agreed upon ; it may therefore well be that this contract of sale did not, *ipso facto, et eo instanti,* transfer the right of property to the pur chaser.

The barley was not afterwards weighed by any one ; that mode of ascertaining the amount of the purchase money may therefore be thrown out of view. Let us, however, see if it was not, in another way, completely adjusted between the parties.

About a week after the contract of sale had been entered into the plaintiff's clerk made out a bill of the barley sold to the defendant, stating the amount which it came to, although it does not appear that the precise quantity was mentioned. This bill was handed to the defendant and payment demanded. He paid three hundred dollars thereupon, and according to the evidence, agreed to pay the balance, that is ninety-five dollars, within a day or two. It is but reasonable to understand from the evidence on this point, although not stated in so many words, that the bill was made out from the warehouse books, and if so the defendant's engagement to pay the balance according to the bill, was an unequivocal agreement to abide by the weight of the barley as stated in said books. But even if the bill was not made out as I have supposed, but was a mere estimate of the quantity, the assent of the defendant to that estimate, as proved by the payment of three hundred dollars on the bill and his agreement to pay the balance as stated, would entirely supersede the necessity of ascertaining, in any other way, the weight of the barley sold and the consequent amount of the purchase money. From this time, as the agreement for the sale was absolute and the amount of the purchase money had been fully adjusted between the parties, the right of property as I think, clearly vested in the purchaser. Nothing then remained to be done by the seller before delivery was made ; and although he still had possession and a lien for the purchase

money, the right of property was in the buyer, and with it the risk of all accidents devolved on him. *(See the authorities already referred to.)*

This view, as it seems to me, would dispose of the case, but there is another which leads to the same result, for the barley was in fact actually delivered to and received by the defendant.

When the written contract of sale was made, which was on the 15th of December, the barley was in the plaintiff's warehouse. The defendant was then informed by the plaintiff that he had rented the warehouse to one Camp, from the 1st day of January then next, and that the defendant must make an arrangement for the storage of the barley from that time with Camp. The evidence shows that on the day of making the contract of purchase, or within a day or two thereafter, the defendants agreed with Camp that the barley should remain in store with him until the next spring, for which the defendant was to pay a price then specified and assented to by both parties. On the first of January Camp went into possession of the warehouse under his lease from the plaintiff, and at the same time took charge of the barley for the defendant, as had been agreed between them. This gave to the defendant as full possession of the barley as he would have acquired by removing it to his own store-house, and his right of property was previously complete by the purchase. Property, the right of possession and the actual possession, were here united, and the plaintiff had no longer any right whatever to the barley. His lien for the purchase money was gone, as he had voluntarily transferred the possession of the barley to the defendant. The defendant's arrangement with Camp, for the storage of the barley, was made at the request of the plaintiff, and the transfer of the possession was with his full assent. It amounted to an unqualified relinquishment of all right, on the part of the plaintiff, and a complete acquisition of both possession and property by the defendant. (2 *Kent,* 500, 502; *Russ.* 65, 6, 72, 3; *Chaplin* v. *Rogers,* 1 *East,* 192; *Harman* v. *Anderson,* 2 *Camp.* 243; *Hurry* v. *Mangles,* 1 *id.* 452; *Hollingsworth* v. *Napeer,* 3 *Caines,* 182, 2d ed. and note at *p.* 184; *Bentall* v. *Burn,* 3 *B.*

*§ C.* 423; *Carter* v. *Williams,* 19 *Pick.* 1.) The sale being completely executed, the purchaser and owner, not the seller, should stand the loss. I think the report of the referee should be set aside.

McKissock, J. concurred.

Report set aside.