## HORR *et al v.* BARKER *et als.*

Hutchinson *v.* Bours *et al.* (6 Cal. R. 383) affirmed.

The rule that a factor cannot pledge the goods of his principal is, in this State, confined to technical factors, when the rights of third parties are involved.

When A has six hundred barrels of flour on storage, and he sells to B one hundred, to C two hundred, and to D three hundred, and gives each a delivery order upon his warehouseman, and the purchasers all surrender their several orders to the warehouseman, without making any separation of each lot from the common mass, but voluntarily leave the flour standing on the books of the warehouseman to the credit of each purchaser for his proper number of barrels, it is a complete delivery to each purchaser and will pass the title to each.

The separation by the purchasers of their various lots is a mere matter of convenience among themselves, not affecting their rights as to their vendor or a mere trespasser.

Appeal from the District Court of the Twelfth Judicial District, County of San Francisco.

This case was before this Court upon a former occasion. (8 Cal. R. 503.) Upon another trial in the District Court, some additional facts were proven. The material facts, as they now appear, were substantially these : In December, 1858, Hussey, Bond & Hale sold to Barker & Paddock 6,649 barrels of flour, then on store with Tilden & Little. The sale was negotiated through J. R. West, a broker. There was evidence tending to show that it was understood between Hussey, Bond & Hale, Barker & Paddock, and West, that the sale should be kept secret, for the reason that, if known, so large a sale might affect the market, among dealers in the article. The flour sold was of two different brands, Gallego and Haxall. West was employed by Barker & Paddock to sell the flour for them. Hussey, Bond & Hale drew delivery orders, from time to time, in favor of West, upon Tilden & Little, for a large portion of the flour. One order for another large portion was drawn in favor of Barker & Paddock, who endorsed it to West. Those orders were delivered by West to Tilden & Little, and then credited West, on their books, with the flour specified in the orders. In March, 1854, the plaintiffs loaned West two different sums, making together the sum of $11,500, and received in pledge 1,544 barrels of flour, for the delivery of which they took two warehouse receipts, issued by Tilden & Little to West. These receipts plaintiff surrendered to Tilden & Little, taking from them, in their own names,

two warehouse receipts, dated May 17th, 1854; one for three hundred and twenty-four barrels Haxall, and the other for 1,220 barrels Gallego flour. West was in the habit of selling flour and drawing delivery orders on Tilden & Little, who were accustomed to deliver the flour called for by such orders, if required, and charging West's flour account; or if the purchaser preferred to leave the flour on storage, the quantity called for was placed to the credit of the purchaser on the books of Tilden & Little, and a warehouse receipt issued to him, if required; but no designation or setting apart of any particular barrels was made. On the twenty-ninth September, 1854, West *sold* to the plaintiffs five hundred barrels of Gallego flour, and drew a delivery order upon Tilden & Little for the same, " to be inspected superfine." The order was surrendered by plaintiffs to Tilden & Little on the same day, and they transferred on their books four hundred and eighty barrels to the credit of plaintiffs. The reason they did not transfer to plaintiffs the other twenty barrels, was the fact that West had previously drawn orders for all the flour on storage in his name, except the four hundred and eighty barrels. The 1,220 and the four hundred and eighty barrels of Gallego flour were part and parcel of the original pile, containing 4,135 barrels, and had never been separated from the mass. After the twenty-ninth of September, and up to the seventeenth of October, 1854, plaintiffs had inspected and separated from the mass three hundred and eighty of the four hundred and eighty barrels. On the seventeenth of October, and before the seizure by the Sheriff, the plaintiffs were in the act of completing the inspection and removal of the residue of the four hundred and eighty barrels, when the defendants forbade the plaintiffs from proceeding any further; whereupon the plaintiffs claimed the Haxall and Gallego flour as their own, and demanded the same should be given to them, which was refused by Tilden & Little at the defendants' command; after which the Sheriff took possession of the flour at the suit of Barker & Paddock against Tilden & Little.

Of the original pile of 4,135 barrels Gallego flour, there had been previously withdrawn from the warehouse all excepting 1,682 barrels, of which number 1,320 stood on Tilden & Little's books in the name of plaintiffs, two hundred in the name of McCreery, eighty-nine in the

Horr *v.* Barker.

name of Adams, Welsh & Co., and seventy-three in the name of C. C. Hunter, all remaining together in the same mass. It appeared that ninety per cent. of both the Gallego and Haxall flour was of the quality called superfine, and ten per cent. of the quality called bad ; and that the difference in value was one dollar per barrel.

It also appeared that West, during the years 1854–5, occasionally bought and sold flour on his own account. It was also shown that it was customary in San Francisco for goods to be stored in the name of the factor.

The Court charged the jury " that plaintiffs had made out title to the property described in the complaint, to wit : 1,320 barrels of "Gallego flour, and three hundred and twenty-four barrels of Haxall flour ; and that they were entitled to recover," to which the defendants excepted. The plaintiffs had judgment, and the defendants appealed.

*Delos Lake and Crittenden* for Appellant.

1. West was intrusted with the possession of the flour as the factor or agent of Barker & Paddock. He had no power or authority to pledge it, and the pledgee consequently acquired no title or property by virtue of the pledge. Patterson *v.* Tash, 2 Strange, 1178 ; McCombie *v.* Davies, 6 East. 538 ; Same case, 7 *ib.*, p. 5 ; Newson *v.* Thornton, 6 East. 17 ; D'Aubigny *v.* Duval, 5 D. & E. 664 ; Martine *v.* Coles and others, 1 Manl. & S. 140 ; Boyson *v.* Coles, 6 Manl. & S. 14 ; Barrix *v.* Corrie, 2 B & Ald. 138 ; Wilkinson *v.* King, 2 Camp. 335 ; Monk *v.* Whittenbury, 2 B. & Ald 484 ; (22 E. Com. La. 205) Williams *v.* Barton, 3 Bing 139 ; (11 E. C. L. 70) Guarriere *v.* Peile, 3 Barn & Ald. 616 ; (5 E. C. L. R. 399) Phillips *v.* Nath., 6 Mees. & Welsby, 572 ; Hatfield *v.* Phillips, 9 *Ibid* 646 ; Same case in House of Lords, 14 Mee. & W. 666 ; Skinner *v.* Dodge, 4 Hen. & Mun. 432 ; Van Armedge *v.* Peabody, 1 Mason 440 ; DeBouchont *v.* Goldsmid, 5 Vesey, p. 211 ; Kinder *v.* Shaw, 2 Mass. 398 ; Jarvis *v.* Rogers, 15 *Ibid* 389 ; Urquhart *v.* McIver, 4 John. 103., Note " a " ; Lanssatt *v.* Lippincott, 6 S. & Rawle. 386, 2 Kent Com. 626 (marginal paging) Graham and others *v.* Dyster, 2 Starkes R. 18.

2. As to the flour, pledged by West to the plaintiffs, (viz : 1,220 barrels of Gallego and three hundred and twenty-four barrels of Haxall)

no title vested in the pledgees, for want of a separation or other identification of the property.

It being parcel of a larger quantity of different and unascertained quantity, quality and value, and not being selected or separated so as to enable the plaintiffs to identify any portion as their property, the sale or pledge was incomplete.   Rapebye v. McKee, 6 Cow. 250; Suydam v. Jenkins, 4 Sanford, 609 ; Story on Sales, sec. 296 and note and sec. 340 ; Outwater v. Dodge, 7 Cow. 85 ; Austin v. Cranen, 4 Taunt. 644 ; White v. Wilks, 7 Ibid, 176 ; Bunall v. Jacot, 1 Bard. 167 ; McDonald v. Hewett, 15 John. 349 ; Fitch v. Beach, 15 Wend. 220; Crofoot v. Bennett, 2 Cowst. 259 ; Olyphant v. Baker, 5 Denio 379 ; Downer v. Thompson, 2 Hill 137, and Ibid, 208 ; Adam v. Gorham, 6 Cal. 68 ; Gardner v. Suydam, 3 Selden, 357.

3. The property being parcel of a larger quantity in mass could not be recovered in replevin.   It is not specific property, and it is impossible for the officer to execute the writ.   The officer would have been justified in refusing to execute the order; there being no specific 1,644 barrels of flour, it was not his business to make partition of the whole lot.   Dewiett v. Morris, 13 Wend. 496.

4. The property having been delivered to Barker & Paddock, under and by virtue of process in a previous action of replevin, instituted by Barker & Paddock against Tilden & Little, and they holding possession by virtue of the delivery under such process, it could not be re-replevied by the plaintiff in the action.   Lockwood v. Perry, 9 Metcalf 44 ; Morris v. Dewitt, 5 Wend. 71.

*Shafters, Park & Heydenfeldt and George Hudson* for Respondents.

I. Where segregation is necessary, it can be accomplished by disintegration.

II. The possession of a warehouse receipt or of an order upon a warehouseman accepted by him, is evidence of title to the goods specified therein in such possessor, and has not merely the qualified effect of proving a symbolical delivery to a possession of the property specified, by the holders of such paper.

In this conclusion as to segregation, four different Judges of this Court have concurred, two of whom now upon the Bench declined to listen to

Horr v. Barker.

argument *in extenso* upon the side of the plaintiffs, saying in substance that they were satisfied upon this question, with the former decisions.

Upon the question of the character and effect of warehouse receipts and cognate papers among commercial men, the same state of opinion must have existed.

The question was involved in the first decision, and was directly passed upon in the second.

Upon all authority, these questions must be regarded as closed, for this cause. Dewey v. Gray, 2 Cal. R. 374; Clary v. Hoagland, 6 Cal. R. 685.

The defendants, therefore, find it necessary to bring forward some new matter; and make substantially two points, which they claim exempt their case from the effects of the former decisions; these are,

1. The pendency of the action of these defendants against Tilden & Little, and defendants' possession of the flour in dispute under it at the time of the commencement of this action.

2. The fact that West was a mere agent, and pledged the flour (1,220 barrels Gallego and three hundred and twenty-four barrels Haxall) instead of selling the same to the plaintiffs.

The plaintiffs contend that neither of these circumstances is available for the defendants.

The first objection, if correct in its principle, is available only as a matter of abatement, and should have been so plead.

The whole law of the cases cited by the defendants upon this point, is canvassed in Hunt v. Robinson & Skinker, *ante* 262; and the precise point is ruled in our favor in Rhodes v. Pattison, 3 Cal. 469; Stimpson v. Reynolds, 14 Barb. R. 506; Hoyt v. Van Alstyne, 15 id. 568; Shipman v. Clark *et al.* 4 Denio 446.

2d. If this objection is a valid bar to the action, still it should be specially plead. 1 Chitt's Plead. 591; Gould Plead'g, 329, sec. 45; 12 Wend. 496.

The second new point of the defendants—that as between defendants and West, the latter had only authority to sell as the agent of defendants, and *therefore*, his pledge is invalid—we believe to be, under the circumstances of this case, entirely unsound.

While it may be admitted that no one can grant what is not his, nor

can he do anything for another without being authorized by that other, yet we allege that the principle has its exceptions and qualifications, and is subject to and is controlled by the following, which is of universal application, viz : that all agents must be held to have all those powers, rights and relations which their principal has seemed to confer upon them, or of which he hâs created the appearance.

In relation to a bailment or deposit of personal property in the hands of an agent, two predicaments may exist.

1st. The agent may be a mere depositary and have a naked possession.

2d. Added to possession, he may have other *indicia* usually accompanying and characterizing the absolute ownership.

Under the first of these conditions, that of mere possession, all the cases cited by defendants, properly arrange themselves.   Pickering *v.* Busk, 15 East, 38.

In this case our general proposition is fully maintained, and the inhibition to pledge by factors and brokers, is confined to those having a naked possession, and whose business character was notorious.

McCombie *v.* Davies, 6 East. 538.   The plaintiff never, in any way, interfered with the property nor with the evidences of title, never knew of the agent's wrongful act until after its performance—a broker purchased with plaintiff's money, and without the knowledge or aid of plaintiff, converted the property by pledging it to defendant.

Martini *v.* Coles *et al.*, 1 M. & S. 140.   The several Judges confine the exception from liability in favor of the principal to mere naked possession in the factor.   In this case, however, there was no *pledge ;* a mere conversion.

Boyson *et al. v.* Coles, 6 M. & S. 14.   All the Judges concur in saying, if the principal arms the agents with the *indicia* of property, such act enables them to deal with it to others as their own.

Kingsford *et al v.* Merry, 38 E. L. & Eq., 582.   This case is put distinctly upon the ground of a fraud having been committed against the principals, and not that they had furnished the means for the fraud.

Warner *v.* Martin, 11 How. R., 209.   The general doctrine as to factors and other agents, stated : " there were no *indicia* of title

issued on the part of the owner ; he merely parted with the possession."
Justice Wayne's opinion, p. 220.

Covill v. Hill, 4 Denio, 327.  This case is put entirely upon the
ground that the owner of the property had done *nothing* by which
others could have been misled.

Saltus v. Everett, 15 Wend. 474, and 20 *Ib.* 267–285.    The
decision of the Superior Court was to the effect that naked possession
empowered an agent to bind the property to all intents.    While- this
extreme doctrine is not sustained, a bill of lading was considered suf-
ficient as evidence of title.

Root v. French, 13 Wend. 572, holds that a fraudulent purchaser
may sell or hypothecate to another.

We insist that *West* was not an agent with a *mere* possession ; he
had by the direct act and consent of the defendants, for the purpose
of giving him the apparent ownership of the flour, *indicia* of title—
universally recognized as such—and the only way that defendants can
escape all the consequences of an assumption of the right of an entire
owner on the part of West, is by showing notice to plaintiffs, which
*notice* is *negatived* by the case.

All the cases before cited, rightly understood, are authorities for the
plaintiffs upon both points ; in addition we cite the following :  Wilkes
v. Fountain & Ferris, 5 T. R. 335 ; Gibson v. Stevens, 8 How. 384 ;
Gardner v. Howland, 2 Pick, 599 ; Brower v. Peabody, 3 Kirn. R.
121 ; Bank of Rochester v. Jones, 4 Coms. 497.

Upon the question of West's power, thus armed, Mowry v. Walsh,
8 Cow. p. 238, is *in pari materia,* and is universally approved so.
Root v. French, 13 Wend. 572, 4 Denio, 327 ; 20 Wend. 267, and
38 Eng. L. & Eq., 582, *supra,* and wherever it is cited or spoken of,
it is treated as a decision at common law, and not under any statute.

In addition, we have to say that the doctrine for which we contend
cannot be denied without subverting Ruiz v. Norton, 4 Cal. R. 355-8 ;
Coit v. Humbert, 5 Cal. R. 260 ; Leet v. Wadsworth, 5 Cal. 460 ;
Hutchinson v. Bowers, 6 Cal. R. 383 ; Jarvis v. Rogers, 13 Mass.
R. 105.

All the cases cited by defendants, it is believed, were cases between

the vendor and vendee, directly, and are put upon the ground that the *vendor never intended* to part with the possession.

White *v.* Wilkes, 5 Taunt. 176. The whole bulk, a part of which was in dispute, remained in the possession of the vendor in full ownership. It was a case of a liquid, which makes the difficulty much greater than in the case of a solid substance. " Per Ch. J."

Shepley *v.* Davis, 5 Taunt. 617, is put upon the character of the delivery order of vendor, and that of non-compliance of vendee with the terms of sale, and that vendor rightfully rescinded.

Busk *v.* Davis, 2 M. & S. 397. The same point as in the last preceding case. The Court, Le Blanc and Bayley, Justices, takes the precise distinctions made by this Court in its last decision in the case at bar. " The question is between vendor and vendee. The difficulty arises from not keeping that correctly in view."

Austin *v.* Craver, 4 Taunt. 644, is put solely upon the ground that the property in dispute was not *in esse* at the time of alleged sale, and that therefore it was a mere executory contract to sell and deliver *in futuro*. The same in principle as Suydam *v.* Jenkins, 3 Sand. 614 ; Andrews *v.* Dieterich, 14 Wend. 31 ; Ward *v.* Shaw, 7 Wend. 404, and other cases cited, are put upon the ground that vendor had not parted with the possession except as to a bailee.

Wood *v.* McGee, 7 Ohio, 128, (7 Ham. 466) is another case where the bulk remained in the possession of the vendor.

Reverting to the old cases of Whitehouse *v.* Frost, 12 East. 614 ; Jackson *v.* Anderson, 4 Taunt. 24, we find the precise facts passed upon involved here.

The bulk out of which a parcel is sold had passed from the possession and ownership of the vendor. In Busk *v.* Davis, this very distinction is taken, as in the cases cited by defendants, and sustained.

Oliphant *v.* Baker, 5 Denio, 379 ; Crofoot *v.* Bennett, 2 Coms. 258 ; Riddle *v.* Varnum, 20 Pick. 280, all put the solution of the question, Does the title pass ? upon the intention of the parties. The vendors remaining in possession, is only evidence as to intention. This case, October Term, 1857, p. 467.

(This case was decided at the July Term, 1858. Subsequently a

petition for a new hearing was filed, which was pending when the tenth volume went to press.   Petition was denied at the April Term of that year.) ·

BURNETT, J., after stating the facts, delivered the opinion of the Court—TERRY, C. J., concurring.

The first point made by defendants is, that West, being only employed to *sell*, had no right to *pledge*, not even to persons ignorant of the fact that he was not the owner.

In the case of Martine (V. Coles, 1 M. & S. 145) Lord Ellenborough said:

" But it has been decided ever since the case of Patterson *v.* Tash, that a factor cannot pledge.   Perhaps it would have been as well if it had been originally decided, that when it was equivocal whether a person was authorized to act as principal or factor, a *pledge* made by such a person, free from any circumstances of fraud, was valid.   But it is idle now to speculate on this subject, since a long series of cases has decided that a factor cannot pledge."

Le Blank, J., in the same case, said :

" Whether it might not originally have better answered the purposes of commerce to have considered a person in the situation of Vos, having the apparent symbol of property, as the true owner in respect to that person who deals with him under an ignorance of his real character, is a question upon which it is now too late to speculate ; since it has been established by a series of decisions, that a factor has no authority to pledge, whether the person to whom he pledges has or has not a knowledge of his being factor."

Bayley, J., also said that " a factor has authority to sell, but not to pledge ; and, therefore, a person who takes a pawn of a factor takes it at his peril.   If the principal does anything to induce the person to believe the factor really the principal, that would be a different case.   Cases may, perhaps, exist where a principal would be bound by a pledge made by his factor."

It is very evident that the Judges thought the rule, as originally established, was a hard one ; but they feel themselves constrained to adhere to a long series of decisions.   The Acts of IV Geo., 4 C. 83,

and of VI Geo., 4 C. 94, were subsequently passed, modifying this rule. (Phillip *v.* Huth, 6 Me. & W. 594, 596.) A statute of sim-ilar import was passed in New York in 1830. (1 R. S., 2d Ed., p. 762; Warner *v.* Martin, 11 How., U. S., 228.)

In this State we have no statute upon this subject, and the harsh-ness and injustice of the rule, as originally established in England under the views there taken of the commercial policy of that country, (and which reasons are inapplicable to our condition) induced this Court, in the case of Hutchinson *v.* Bours, (6 Cal. Rep. 383) to con-fine the rule to a technical factor, " where his only business is to sell goods consigned to him for that purpose." We see no sufficient rea-son for deviating from the doctrine of that case.

The next point that requires examination is, the objection that no title vested in plaintiffs for want of segregation : the flour being of different qualities, though all of the same brand, was placed in one pile by itself. In the former opinion we said : " The title to the entire lot had passed from West to the different purchasers, and the flour remained with Tilden & Little, in the same state it would have been in had each purchaser first separated his number of barrels from the mass, and then they had all put them together afterwards."

We have examined the most important authorities referred to, and see no reason to change our former opinion. West had a certain num-ber of barrels on store in one mass ; and as he sold different portions of this mass to different purchasers, he drew a delivery order for each parcel. Those several orders were surrendered by the purchasers to the warehousemen, who credited each purchaser with the number of barrels to which he was entitled. This the parties had the right to do. There was nothing improper in this voluntary act. It was matter of convenience to all. When each purchaser presented his delivery order from West, he was entitled to a separation of his number of barrels from the mass, or not, *at his election.* Each purchaser knew the exact condition of the flour, and each had the right to let his por-tion remain in the general mass. When West had drawn for the whole amount, and the last purchaser had surrendered his order, there was nothing further for West to do. The purchasers could not call on West to separate each portion from the mass, because each purchaser

Horr *v.* Barker.

had voluntarily taken his portion in the mass. After surrendering their several orders, and taking a credit on the books of Tilden & Little, the purchasers had no further claim upon West. When A has six hundred barrels of flour on store, and he sells to B one hundred, to C two hundred, and to D three hundred, and gives each a delivery order upon his warehousemen, and the purchasers all surrender their several orders without making any separation, but voluntarily leave the flour standing on the books to the credit of each for his proper number, we confess we cannot see what further act A has to perform, or why there is not a complete delivery to each purchaser. If the purchasers choose to leave their flour in the mass, and to trust to each other, it is their right to do so, and the seller has nothing further to do in the matter of delivery. The title has completely passed from the seller to the purchasers, respectively.

And the fact that the flour was of different qualities can make no difference under the circumstances of this case. The plaintiffs had possession of a certain number of barrels under the pledge, and a certain number under their purchase; they had voluntarily received the four hundred and eighty barrels without inspection. By this act they waived the inspection as a condition precedent to delivery. After having received the four hundred and eighty barrels, by having it placed to their credit on Tilden & Little's books, the plaintiffs could only look to West upon his covenant, that the flour should inspect superfine. Considering the dealings between West and the plaintiffs, they had the right to select the four hundred and eighty barrels from the whole mass received by them from West, so as to place all the bad flour among that which was *pledged* to them. This was what they were doing when they were forbidden by the defendants.

The reasoning of the Supreme Court of Ohio, in the case of Woods *v.* McGee, (7 Ohio, 128) commenting upon the decision of the Court of Appeals of Virginia in the case of Pleasants *v.* Pendleton, (6 Rame. 473) does not seem to us to be conclusive.

" It is impossible," says the Court, " to answer the difficult inquiry, if a part only of the flour had been burnt, in that case on whom would the loss have fallen ? If A, being the owner of two thousand barrels of flour, sells one thousand to B, but without anything being done to

ascertain the identity and individuality of the part sold, and one thousand barrels are consumed by fire, what is there to determine that one thousand are the property of the vendor, and that he shall bear the loss ?"

It appears to us that the Court sacrificed the common sense and justice of that case to the misapplication of a good principle, when confined to proper circumstances. Suppose A sells and delivers one thousand barrels to B, and five hundred to C, and that the two purchasers afterwards put their flour together in one mass, all being of the same brand, and without marks to distinguish one brand from another; in case of partial loss upon whom would it fall ? It would seem to be a very inadequate system of jurisprudence that could not give a solution to that question. The parties had a just right to do what they did do ; and common justice would say, they should each bear the loss in proportion to his interest in the whole. And what possible difference can it make if one of the parties be the seller and the other the purchaser ? In this latter case, as in the former, they are each the separate owner of a specified number of barrels. The seller has a thousand barrels in a warehouse in one mass, and sells to a purchaser a portion, and gives him a delivery order, which he presents and takes a warehouse receipt in his own name, leaving the flour in the mass. From the transaction, it is clear that it is the mutual agreement of the seller and purchaser that the property should remain together; for the plain reason that practical common sense will not dispute about the separate identity of two or more things that are all just alike. In all such cases, we conceive it to be the duty of the Courts to look to the *intention* of the parties. They are competent to contract, and they have a practical knowledge of the best method of carrying out their intentions ; and the Courts should give effect to such intentions when ascertained. If the parties considered it a delivery, it should be held to be such, as between them, or as between them and mere trespassers.

The next point which requires notice is, the objection that the property in controversy, being parcel of a large quantity, could not be recovered in replevin.

If the views we have taken be correct, that the title had passed

from West to the several purchasers, then there was nothing in the state of the pleadings that would warrant the defendants in raising this question.  If we consider, for the sake of argument only, that the other owners should have been joined in the action, either as plaintiffs or defendants, this objection should have been set up in the answer.

The only remaining objection made by the learned counsel of defendants which it is necessary to notice is, that the property, having been delivered to Barker & Paddock by virtue of process issued in their previous action of replevin against Tilden & Little, it could not be replevied by the plaintiffs in this action.   This objection, whether sufficient or otherwise, was not affirmatively set up in the answer, and the proof offered was properly rejected.

Judgment affirmed.