## RHOADS and others *vs.* WOODS.

A sheriff acquires a lien upon property levied on by him under attachments, which constitutes a qualified or special title.

He is thereby authorized to take and hold possession until the demands for which the attachments were issued are paid, or until judgment and a sale of the property seized.

The assertion of that title, against a wrongdoer, in the state of New York, cannot be considered as an attempt to excute the process of another state within our borders.

The title of a foreign assignee in bankruptcy, or *in invitum*, to personal property, is admitted here, as against the bankrupt or insolvent, and the same principles are applicable here to support the special title of a sheriff, acquired under the process and laws of another state, as against any wrongdoer, or against the defendant in the process under which the sheriff seized the property.

If property levied on under an attachment is taken out of the hands of the sheriff, a reasonable sum for the expenses of regaining the possession will follow the lien of the sheriff, as an incident to the performance of his duty, and to that extent he may insist upon being repaid, if he acquires possession in a lawful manner.

Where the interest of a party entitled to the possession of personal property is of a limited nature less than the actual value of the property replevied, the jury, in an action of replevin between the actual owner and the party entitled to the possession, should be directed to assess the value of the property, only at a sum which will be equivalent to the limited interest of the defendant, therein.

THIS was an action of replevin, (tried before a referee,) to obtain possession of the brig Gilmore Meredith, which, at the time of the commencement of this action, May 28, 1860, was in the possession of the defendant at Brooklyn, in the harbor of New York, and was given up to the plaintiffs by the proceedings in this action. The defendant was a deputy sheriff of Hancock county, in the state of Maine, at Buck's Harbor, in which county the brig was built, in the year 1858. It was admitted on the trial that on the 12th of October, 1858, the plaintiffs and one Albert Gray were the owners of the brig, and that on the 12th of October Albert Gray conveyed one half of the brig to Andrew Gray, who afterwards, and prior to the commencement of this action,

conveyed his interest to the plaintiffs, W. and J. R. Rhoads. The referee finds the same facts, with the variation that the plaintiff Jackson's interest was acquired December 15, 1858. The vessel was launched November 2, 1858. The defendant proved that between the 21st of October and the 4th of November he attached the said brig, by virtue of ten different attachments, for debts due by Albert Gray, or by Albert Gray and Jeremiah Grindle. Most of the attachments were served before the brig was launched; some were served after. The defendant took possession by putting two men in possession as keepers of said brig. On the night of the 13th of November, 1858, the keepers having left the brig, and neither the keepers nor the defendant, or any agent, or any one connected with them, being on board, the master of the brig, Captain Albert Gray, with the assistance of Henry Orcutt and others, sailed away from the state of Maine to Baltimore, in the state of Maryland, with the brig. On the 2d day of December, 1858, the defendant wrote to two of the plaintiffs that the amount due on the attachments was about $2000, and claiming that when the vessel was taken from his possession the attachments were in force, and desiring to know if they would pay the amount due thereon, without the necessity of his pursuing the vessel and retaking her; to which no answer was received. The brig remained at Baltimore until about January 1, 1859, when she came to New York, where she arrived prior to January 12, 1859. Between the 9th and 11th of April, 1859, the plaintiff William Rhoads and the defendant had an interview in New York, at which the defendant claimed as the amount due on the attachments, for the amount of the claims and for the defendant's trouble, expenses and costs, the sum of $2500. In this amount the defendant included a charge of about $500 for coming to New York; and he claimed for costs after the vessel left, including the Newcomb claim, five or six hundred dollars. This claim to receive $2500 was in answer to the offer of the plaintiff to pay all just claims. At this interview the plain-

tiff offered to pay in gold the amount of the Newcomb attachment, the only unpaid attachment. This offer the defendant denied, and this is the only disputed fact in the case. Immediately after this interview, and on the 12th day of April, 1859, at Brooklyn, the defendant put the captain and mate of the brig out of the way, by causing them to be arrested on a criminal complaint, and then forcibly took possession of the brig as *deputy sheriff*, the brig at the time being in the possession of the plaintiffs, the owners. The defendant *did not take the brig back* to Maine to be disposed of according to law, but, as the plaintiffs insisted, kept her *for the purposes* of extorting illegal *fees, in the city of New York*, until the end of the month of May, 1859, when she was taken out of the defendant's possession by this suit. The plaintiffs, between the 23d of April and 6th of May, 1859, settled in Maine the claims of all the plaintiffs in the attachment suits, together with their costs, excepting that of S. B. Newcomb, (amounting to $88,) and on the 3d of May they paid the defendant, in Maine, his fees in seven of the suits, $75. The claim in the Newcomb suit was contested, and was paid in April or October, 1860. At the time of the trial it appeared that Newcomb's claim was paid, and that the defendant could only claim on account of fees, the sum of $85.87. The referee reported in favor of the defendant, directing a judgment, which was entered, for a return of the vessel; or if such return could not be made, then for the value of it, assessed at $10,000, with costs. From the judgment entered upon the report the plaintiffs appealed.

*Beebe, Dean & Donohue*, for the appellants.

*Thos. H. Rodman*, for the respondent.

*By the Court*, LEONARD, J. 1. The referee has found that the defendant was in possession of the vessel by virtue of the

attachments in his hands as deputy sheriff, at the time she was taken out of the jurisdiction of the state of Maine, on the 13th of November, 1858. The evidence fully supports the facts so found. The sheriff acquired a lien by virtue of the levy under the attachments, and that constituted a qualified or special title. He was thereby authorized to take and hold possession until the demands were paid for which the attachments were issued, or until judgment and a sale of the property seized. The assertion of that title against a wrongdoer in the state of New York cannot be considered as an attempt to execute the process of another state within our borders.

The temporary absence of the keeper or person in charge for the sheriff in the state of Maine without leave, was not a relinquishment of custody. The act of the master in unmooring the vessel and taking her out of the bailiwick of the sheriff was a misdemeanor; probably under the laws of the state of Maine it was a felony; the owners acquired no legal right thereby to detain the vessel from the sheriff.

The title of a foreign assignee in bankruptcy, *or in invitum*, to personal property, is admitted here as against the bankrupt or insolvent. (*Holmes* v. *Remsen*, 20 *John.* 229. *Story's Confl. L.* §§ 410 *to* 420, *and notes.* 2 *Kent's Com.* 406, *and notes.*)

The same principles are applicable here to support the special title of the sheriff acquired under the process and laws of another state, as against any wrongdoer, or against the defendant in the process under which the sheriff seized the property. The exceptions to the report in this respect are not well taken.

2. The plaintiffs except to the report because the referee did not find that the defendant took possession of the vessel at New York by violence. There is no evidence in the case of any violence, in this respect. The referee has found that the defendant repossessed himself of the vessel about the 12th of April, 1859, at New York. The evidence is that the officers of the vessel were arrested and taken to prison, and then

the defendant took possession. This was not a voluntary relinquishment of the vessel to the defendant. There is no evidence, however, that the defendant caused the arrest. If the defendant regained possession without fraud or force, there was no breach of the peace, and no violation of the laws of this state, and the possession of the defendant cannot be disturbed. It would have been eminently proper for the defendant to have sought the protection of our laws in respect to his title. The owners or claimants in possession here might have desired to insist that the courts in Maine had not jurisdiction to grant the attachments; the process under which the levy was made might have been void; or the debt for which it was issued might have been paid. There is no exception to the report, and no evidence on the part of the plaintiffs to support one, in respect to any fraud or violence by the defendant to repossess himself of the vessel. The report cannot be disturbed on this ground.

3. The plaintiffs also except that the referee has not found that the plaintiffs offered to pay, and tendered to the defendant all his claim, costs, and charges against the vessel. The evidence is that the plaintiffs offered to pay all just claims and legal costs, and the defendant required them to pay $2500, in order to discharge the vessel. The referee has not found what was the amount of the defendant's lien against the vessel at this time; nor whether the plaintiffs offered to pay the amount due; nor what demand the defendant made in this respect. The aggregate of the demands claimed by the attachments in the defendant's hands indicate that he included in the sum which he required the plaintiffs to pay about $500, for expenses incurred in regaining possession. It may be that the defendant required the plaintiffs to pay more than he could lawfully claim.

A reasonable sum for the expenses of regaining possession followed the lien of the sheriff, as an incident to the performance of his duty, and to that extent he might insist upon being paid, if he acquired possession here in a lawful manner.

Whether the amount claimed for expenses was a legitimate and reasonable sum for such expenses the referee has not found, and the evidence does not afford him the means of deciding. The offer of the plaintiffs amounted to nothing definite; they made no tender. There is no exception on this ground, that can be maintained.

4. The plaintiffs also except that the referee should have found for the defendant only the amount of his claim and costs. The action is replevin. The referee has assessed the value of the vessel at $10,000, and given judgment for the return thereof to the defendant, or if such return cannot be made, then for the said value. This is erroneous. Where the interest of the party entitled to the possession is of a limited nature, less than the actual value of the property replevied, the practice has long prevailed to direct the jury to asesss the value as against the actual owner only at a sum which would be equivalent to such limited interest. This practice was adopted under the provisions of the revised statutes, prior to the code, to avoid circuity of action, and it has since continued under the code. The provision of the revised statutes was similar to section 277 of the code in respect to the assessment of the value of the property replevied. It has been held in several cases that the provision of the revised statutes, in respect to assessing the value, must be so construed as to cover only the value of the special or limited interest of the prevailing party in an action between the actual owner and a party having a limited interest. (*De Witt* v. *Morris,* 13 *Wend.* 496, 499. *Russell* v. *Butterfield,* 21 *id.* 300.) The code, section 277, must be construed in the same manner. (*Alt* v. *Weidenberg,* 6 *Bosw.* 178.) This rule of construction is necessary and just.

It would be indefensible to allow the defendant in this action to recover $10,000 against the plaintiffs. No such sum is required to indemnify him. We might reduce the sum to the proper amount, but there is no evidence, and no

fact found by the referee which will enable us to fix the precise sum which the defendant ought to recover.

The judgment should be reversed, and the case sent back to the referee for a new trial, with costs to abide the event.

[NEW YORK GENERAL TERM, May 2, 1864. *Leonard, Clerke* and *Sutherland,* Justices.]