EDWARD P. JONES, Defendant below, appellant, v. NUTTER L. DAVIS, Plaintiff below, respondent.

If the owners of goods on board of a vessel consigned to his agent in Philadelphia for sale, sells them to another before the vessel has sailed and receives the pay for them from the purchaser, on the condition that he gives the captain of her an order to deliver them to the agent of the purchaser in the same city, and he thereupon gives a written order to the captain to deliver the goods belonging to him on board of the vessel, to the agent of the purchaser in Philadelphia, and after long detention by ice the vessel is finally cut through and sunk and the goods are totally lost on the

voyage and before they reach there, the contract of sale will be complete so far as the constructive delivery of the goods to the purchaser is concerned, and will vest the property and ownership of them in him from the time the captain received and accepted the order of the vendor to deliver them to the agent of the purchaser in Philadelphia.

PRONARR in assumpsit on an appeal from a Justice of the Peace, to recover the price of five bags of dried peaches bought by Davis, the plaintiff below, of Jones, the defendant below, and paid for, but which the former alleged had not been delivered. Davis resided in Milford and was engaged in buying and shipping such articles to his agent in Philadelphia, and Jones was engaged in the like business at Milton, and had at the time of the sale to the plaintiff, the peaches on board of a vessel at the latter place for shipment to his own agent in the city; but on the 16th of December, 1863, he wrote to Davis that he had 385 pounds of peaches at 11 cts. a pound, and when he sent for the other trade, he could send him the amount and he would send him an order for them, to which Davis replied on the 18th of that month, that if he had countermanded his order to the captain of the vessel in regard to them, and would send him an order for them, and give him the name of the captain and the vessel they were on board of, the bearer of his letter would pay him for the peaches so shipped at 11 cts. per pound, but if his captain and the vessel were out of reach, or would get to Philadelphia before any order he might send him (Davis) could reach there, and he was disposed to abandon the bargain, he was not himself particularly anxious for them. Still he could do as he chose in regard to it. But on the following day Jones gave a written order to the captain of the vessel to deliver to Mr. N. L. Davis' agent in Philadelphia, the five bags of peaches belonging to him, weighing 385 pounds, and for which he had received payment amounting to $42.35. The vessel sailed from Milton the next day, but was soon after frozen up at the mouth of the creek and could not get out of it until the month of February, and was afterward, on her voyage to Philadelphia, cut through by the ice and sunk in Bom-

bay Hook Roads, where the peaches became a total loss.

*Layton for the plaintiff below.* Although Davis had bought and paid for the peaches, the sale of them by Jones to him was not consummated and complete up to the time of their destruction by the accident which befel the vessel on her voyage to Philadelphia, where they were to be delivered to the agent of the former, and therefore the legal ownership and property in them had not been changed or transferred from Jones to Davis, and consequently the destruction of them must be the loss of Jones and not of Davis, and if so, there could be no doubt of the right of the latter to recover the amount of money which he paid for them. No contract of buying and selling, and no sale can be complete without a delivery, actual or constructive, of the goods sold, and there was neither an actual, nor a constructive delivery in this instance, of the peaches by the defendant to the plaintiff, or his agent in Philadelphia. The written order of Jones to his agent and bailee, the captain of the vessel, in whose custody he had placed them, with directions in the first instance to deliver them to his own agent in Philadelphia, precluded in its very terms any other idea, or intention, or understanding of Jones himself in regard to the transaction up to the time of the destruction of the goods. For the language of it is "Capt. John Wilson will please deliver to Mr. N. L. Davis' agent in Philadelphia, the five bags of peaches belonging to me," &c. And who after reading that can say that they did not belong to him until they were in fact delivered by his agent to whom it was given, and in whose custody and possession they were to continue as belonging to him, until they were, in the words of it, delivered to Mr. N. L. Davis' agent in Philadelphia? The rule of law on this subject is that no sale is complete, so as to vest an immediate right of property in the purchaser, so long as anything remains to be done between the seller and the buyer of it. Even when the purchaser has assumed ownership and control over the things bargained for, but which was not done in this case, it will not be sufficient

evidence of delivery, but affords merely presumption of it, which may be rebutted by proof to the contrary. *Story on Contr. sec.* 800.

*Cullen for the defendant below.* When the article sold is not in the personal custody or possession of the vendor, the law does not require an actual delivery of them to complete the sale and vest the ownership, or property in it in the purchaser, but only that it shall be put under the absolute power and disposal of the vendee. *Story on Sales, sec.* 311. Thus the assignment of a bill of lading will transfer the property in goods at sea; and in such a case, the delivery of the goods in contemplation of law is a constructive delivery, and an actual delivery under such circumstances being impracticable, it is not necessary to change or transfer the property in the goods from the vendor to the vendee and to perfect the sale; for in such a case, it is complete without an actual delivery. So, a constructive delivery may be made by a verbal order merely by the vendor to a bailee in the presence of the vendee, to hold the goods sold to the sole use of the vendee, and it would constitute a sufficient delivery in law to transfer the property in them and to complete the sale of the goods; because the law only requires such a delivery as is practicable and consistent with the character, condition and situation of the goods at the time of the sale of them, and no other delivery was possible under the circumstances. *Story on Sales, sec.* 311. In a contract of sale where nothing remains to be done to the goods by the vendor before making the delivery of them to the purchaser, the property in them is transferred from the former to the latter, and the sale is complete, although the price has not been paid, and the goods have not in fact been delivered. *Olyphant v. Baker*, 5 *Denio* 379. Also a delivery of goods to a common carrier in the usual course of business, will be a sufficient delivery to the vendee to complete the sale and to vest the property in the goods in him, although the right of stoppage *in transitu* still remains in the vendor. And therefore it is that a delivery

by a consignor of goods on board of a general ship, or a ship chartered by the consignee, is a delivery of them to the consignee. *Story on Sales*, sec. 306. He would cite but one more authority. A merchant sold a hundred barrels of flour in a certain warehouse, which were marked with eight different mills from which they came, the purchaser gave him his check for the price agreed on, upon which the merchant gave him a bill of parcels specifying the number of barrels of each brand and at the same time an order on the warehouseman for the flour and a receipt in full for the price of the flour, the whole quantity was soon after burnt with the warehouse. It was held by the court to be a complete and executed contract of sale, and that the property in the flour passed to and vested in the purchaser. *Chit. on Contr.* 375 *in note* 1. *Pleasants v. Pendleton*, 6 *Rand.* 473.

*Layton* replied.

*The Court, Gilpin C. J., charged the jury.* There was no question or dispute about the fact that a bargain or contract was entered into between the parties for the purchase by the plaintiff from the defendant of the five bags of dried peaches which the latter had at that time in charge of Capt. Wilson on board of the vessel commanded by him at Milton, and which he had directions from the defendant to deliver to his agent, Mr. Christian, in Philadelphia, but which order the defendant countermanded soon after the contract was entered into and directed him to deliver them to the agent of the plaintiff in that city. The evidence of the contract was before them in writing, in the brief letter of the defendant to the plaintiff of the 16th of December, 1863, and in the plaintiff's reply to it of the 18th of that month, and the written order of the defendant the next day to Capt. Wilson to deliver the bags of peaches belonging to him to the agent of the plaintiff, with a receipt to the plaintiff of the price paid by him for them, amounting to $42.35 for 385 pounds of dried peaches at 11 cts. per pound.

The plaintiff had acceded to his offer to sell them at that price, and the defendant in his turn accepted his offer and the terms on which it was made, and received the money and gave the order on the captain to deliver them to the agent of the plaintiff in Philadelphia, as he was requested and required to do in the letter of the plaintiff to him. But upon this state of facts the question has arisen to which of them did the fruit belong at the time when the vessel was sunk on her way to Philadelphia with it, and it was entirely lost in the month of February following. And the solution of that question depends on the fact whether it was, or was not, delivered to the plaintiff when the order of the defendant before mentioned was received by Capt. Wilson, on whose vessel it then was, and on which it had been previously shipped by the defendant under his charge for Philadelphia, and which order, he has testified, was received by him from the defendant, after the vessel which had sailed from Milton on the 20th of December, was detained by the ice near the mouth of the creek, some time during Christmas week on his visiting Milton whilst the vessel lay below in the ice. On behalf of the plaintiff it had been contended that although he had bargained for and had paid for the fruit at the price offered by the defendant, the contract for the purchase of it by him and the sale of it by the defendant, had not been perfected and completed by the delivery of it to him at that time, and that according to the contract of sale proved in the case, the sale could not be completed so as to transfer the property in it or the ownership of it from the defendant to the plaintiff and vest it in the latter, until it had been delivered to the agent of the plaintiff in that city, and that until it was so delivered, it remained and continued to be the property of the defendant; whilst just the reverse of this is contended for on the part of the defendant, that is to say, that as soon as the defendant's order to Capt. Wilson to deliver it to the agent of the plaintiff there was received and accepted by him, the contract of sale was completed and perfected on his part, and that there was nothing fur-

ther remaining for him to do in regard to it under the contract, and that it consequently thereby became from that moment, the absolute property of the plaintiff in the possession of Capt. Wilson who then became his bailee, instead of the defendant's, to deliver it to his agent in Philadelphia. And the decision of this question depends on the terms and the meaning of the contract itself, and whether in doing that, the defendant did all he contracted or agreed to do in regard to it, according to the true meaning of the terms employed in it, for if he had failed in any essential particular to do that which he was bound to do by the terms of his agreement in respect to the matter, the contract had not been completed and perfected on his part, and that defence could not avail him, and their verdict should be for the plaintiff. But if on the contrary, in doing that, he did all that he was bound by the terms of the contract to do in regard to the matter, then their verdict should be for the defendant. It was therefore a question of fact for the jury to decide from all the evidence and the written terms of the contract of sale which they had before them. But as the court had been requested to instruct them in relation to certain principles of law stated by the counsel in their argument of the case, it would suffice to say that no sale of goods is complete, or can transfer the ownership and property in them from the vendor to the purchaser of them without a delivery of them, but there are two kinds of delivery of goods sold known to the law, which it will also suffice to notice in this connection, the one actual and the other constructive. An actual delivery is when the goods are in the actual possession of the vendor and are put either at the time of the sale, or afterward, into the actual possession of the purchaser as his property by virtue of it; but what is termed a constructive delivery of goods sold as known to the law, may occur when the vendor puts them in the possession of an agent or bailee of the purchaser to be delivered to him, or to be held by him for the purchaser as his property under the sale, or it may occur when they are out of the actual pos-

session of the vendor and in the actual possession of an agent or bailee of the vendor at the time of the sale and he instructs him that he has sold them to the purchaser and to deliver them to him, or to retain the possession of them as the property of the purchaser accordingly. In either of these cases, although the delivery to the purchaser is not actual or immediate, still the law construes it to be a delivery to him, because it is delivered to one who by the act becomes his agent and bailee for the purpose, and that is regarded as equivalent to a delivery of them to the purchaser himself. And therefore it is that a delivery by the vendor of goods sold to a common carrier for the purchaser, is a sufficient delivery to the purchaser to enable the vendor to maintain an action for goods sold and delivered against him, for the moment the goods are delivered to the carrier, it operates in law as a delivery to the purchaser, and the whole property in the goods immediately vests in him; he alone can bring an action for any injury done to them, and if any injury happens to them, it is at his risk. The only exception in such a case to the rights of the purchaser over the goods sold is that the vendor in case the purchaser becomes insolvent, may stop them *in transitu. Add. on Contr.* 343. There is also such a thing known to the law, as what is called a symbolic delivery of goods bargained and sold, and which is exemplified in the case cited at bar of goods sold while yet at sea by the consignee of them, in which the assignment of the bill of lading and delivery of it to the purchaser is held to constitute a sufficient delivery of the goods themselves to the purchaser to transfer and vest the title and property in them from that moment in him. In all the cases referred to, the delivery to and possession of the carrier, agent, or bailee becomes in contemplation of law, a delivery to and the possession of the purchaser and completes the sale so far as the delivery of the goods is necessary for that purpose.

The defendant had a verdict.